(C.D. 2330)

FLOREA & Co., INC *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 10, 1962)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., dissenting

FORD, Judge: The protests listed in schedule "A," annexed hereto and made a part hereof, are directed against the action of the collector of customs in classifying certain children's woolen gloves (style No. 180) under the provisions of paragraph 1529(a) of the Tariff Act of 1930 and, consequently, assessing duty thereon at the rate of 90 per centum ad valorem. Said provision, so far as pertinent herein, provides as follows:

* * * and fabrics and articles embroidered (whether or not the embroidery is on a scalloped edge), * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in

this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. * * *

It is the contention of plaintiff that said gloves are subject to duty at the rate of 50 per centum ad valorem under the provisions of said paragraph 1529(a), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides as follows:

> Articles of wearing apparel, wholly or in part of lace, or ornamented, however provided for in paragraph 1529(a), Tariff Act of 1930, but not provided for in any other item 1529(a) of this Part_____ 50% ad val.

The meaning of the word "ornamented" is set forth in a note in said trade agreement, *supra*, as follows:

> The word "ornamented," wherever used in any item 1529(a) of this Part, means "embroidered (whether or not the embroidery is on a scalloped edge), tamboured, appliqued, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem."

The record in this case consists of two exhibits, plaintiff's illustrative exhibit 1, which is representative of the imported merchandise, plaintiff's illustrative exhibit 2, which consists of a pair of embroidered gloves, the testimony of one witness called on behalf of plaintiff, and a stipulation of fact entered into by and between counsel for the respective parties. The stipulation, in effect, provides that the imported gloves were classified by the collector as embroidered and that the embroidery is on the applique but not on the glove *per se*.

Mr. Stanley Florea testified that he is connected with plaintiff herein and that, among his duties, he purchases various types of imported gloves; that his duties also include the selling of gloves, which he sells to all parts of the country by personally traveling or having customers come in to his office; that the gloves involved herein were purchased by him as children's gloves, appliqued; that his understanding of the term "applique" is a piece of material that is sewed directly to the article, in this case, a glove, which may be removed without injuring the glove itself; that, in embroidery, the embroidery would be sewed through the gloves and not removable, as in the case of applique.

In view of the stipulated facts, it is unnecessary to set forth the definitions of the terms "embroidered" and "appliqued." It is the position of plaintiff herein that, to justify classification as an embroidered article, the embroidery must be on the article itself and not be on an independent piece of material, such as the applique herein. Counsel for the defendant, on the other hand, argues that the merchandise is dutiable in its condition, as imported. The gloves, as imported, have been appliqued, and the embroidery on said applique

makes the embroidery part of the glove, under the well-established principle that an integral part of an integral part of an article is an integral part of that article. It is also contended by defendant that the gloves fall within the meaning of "Gloves and mittens, embroidered in any manner, wholly or in chief value of wool."

The latter position is one which is in need of clarification since the merchandise was classified as "fabrics and articles embroidered * * *." Apparently both parties are of the opinion that the classification was under the provision for "Gloves and mittens, embroidered in any manner, wholly or in chief value of wool." As indicated, *supra*, the amount of duty at 90 per centum ad valorem is indicative of classification under the provisions of the Tariff Act of 1930, and not by virtue of a trade agreement.

The language relating to gloves and mittens, *supra*, carried with it the rate of duty at 70 per centum ad valorem, by virtue of the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which classification and rate of duty were withdrawn long prior to the date of entry herein by a Presidential proclamation relating to the withdrawal by the Republic of China, 85 Treas. Dec. 295, T.D. 52587.

However, this court, in the case of *Nolan Glove Co., Inc.* v. *United States*, 41 Cust. Ct. 431, Abstract 62547, in considering whether certain gloves, embroidered and ornamented with beads, fell within the provisions of paragraph 1529 of the Tariff Act of 1930, or under the same provision for wearing apparel, as claimed herein, made the following observations:

The Tariff Act of 1930, in paragraph 1529(a), provides for "fabrics and articles embroidered * * * ornamented with beads." The negotiations of the parties to the General Agreement on Tariffs and Trade carved out of the said provision the language covering gloves and mittens as well as that for wearing apparel. These negotiations and concessions were entered into at the same time, which is indicative of the fact that the negotiators intended to grant a concession in the rate of duty on wearing apparel, etc., to 50 per centum ad valorem while at the same time granting a concession of only 70 per centum ad valorem for gloves, embroidered. The negotiators then used the language set out above which clearly indicates their intent to grant this concession only to such wearing apparel, etc., as was "not provided for in any other item 1529(a) of this Part." There can be no doubt that the instant gloves are wearing apparel, but the intent of the negotiators has been clearly set out and the reasons for the differentiation in the reductions granted are clearly indicated in the Summaries of Tariff Information (1948), volume 15, part 5, which states, at page 26 as follows:

This summary covers all wearing apparel which is ornamented with embroidery * * *. The more important articles of wearing apparel ornamented with embroidery or lace included in this summary are hose and

half-hose, blouses, waists, nightwear, corsets and girdles, and gloves other than those of cotton. * * *

Further, at page 28, the background of glove imports and duties indicates the reason why the rate of duty on gloves was not reduced to the same extent as was wearing apparel:

(3) Imports of embroidered wool gloves and mittens were negligible (less than $1,000 a year) before 1936, when they suddenly became of importance, amounting to $165,000 in that year and increasing to $411,000 in 1941. * * * The growth of the substantial imports before the war was due to a change in the rate of duty on nonembroidered wool knit gloves and mittens valued at not more than $1.75 per dozen pairs, provided for in paragraph 1114(b) : the statutory rate had been 40 cents per pound plus 35 percent ad valorem based on foreign value, but on March 22, 1936, the rate was changed (under section 336 of the Tariff Act of 1930) to 40 cents per pound plus 35 percent ad valorem based on American selling price. The revised rate being higher than that applicable to embroidered wool gloves and mittens, the foreign producers added a little embroidery to the articles so that they could be entered under paragraph 1529(a) rather than under paragraph 1114(b). Practically all of the prewar imports came from China and Japan. * * *

Since the provisions for wearing apparel, ornamented, and gloves, embroidered, were negotiated at the same time, the fact that the provision for gloves, etc., was not made effective until the Republic of China acceded to the agreement has no significance. The language used by the negotiators makes it clear that even if China had never acceded to the General Agreement on Tariffs and Trade, *supra*, the instant merchandise could not be properly dutiable under the provision claimed by plaintiff herein because of the language "not provided for in any other item 1529(a) of this Part."

From the foregoing, it is clear that, although gloves are wearing apparel, classification as wearing apparel would be barred, if said gloves were embroidered. Although the provision for "Gloves and mittens, embroidered in any manner," has been withdrawn, the language of said provision must be taken into consideration, since the provision claimed herein was carved out of the basic provision in the Tariff Act of 1930, as indicated in the *Nolan Glove* case, *supra*.

Based upon the stipulation of the parties and an examination of plaintiff's illustrative exhibit 1, there is no question that said gloves, or a part thereof, the applique, contain embroidery. Extensive research of various lexicographic works fails to disclose any information which requires the embroidery to be on or through the article *per se*, as contended by plaintiff herein.

Counsel for defendant cites the case of *United States* v. *Hamburgers*, 18 C.C.P.A. (Customs) 114, T.D. 44068, which involved the classification of certain trimmed straw hats, which trimming had been embroidered, and which were classified as articles, embroidered in any manner. Plaintiff, in that action, contended that the hats were properly dutiable as hats, trimmed (paragraph 1406, Tariff Act of 1922). Our appellate court, however, held the hats to be properly

dutiable, as classified (paragraph 1430, Tariff Act of 1922), and made the following comment:

* * * Paragraph 1406 provides for hats not trimmed and for hats trimmed. But the question before us is not the classification of trimmed hats; the question is as to the classification of trimmed hats embroidered. Paragraph 1406 makes no mention of embroidered hats. If it had done so, and had provided one rate of duty for hats embroidered and another rate for hats not embroidered, then a different question would be before us. Embroidered hats not being specified in paragraph 1406, they are clearly dutiable under the latter part of paragraph 1430 as "articles embroidered * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act."

In our opinion, the case of *Hamburgers, supra*, is controlling in the instant matter. That case, although originating under the Tariff Act of 1922, found the hats involved therein to be embroidered, although the embroidery was on the trimming and not on the hats *per se*. Following the principles enunciated therein, we hold that the gloves involved herein are embroidered.

The protest is, accordingly, overruled. Judgment will be entered accordingly.

### DISSENTING OPINION

Rao, Judge: I am constrained to disagree with the conclusion reached by the majority to the effect that gloves which are ornamented with an embroidered applique are gloves which are embroidered in any manner.

Insofar as the majority holds that gloves which are embroidered are excluded from the provisions of paragraph 1529 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for articles of wearing apparel, ornamented, for the reasons expressed in *Nolan Glove Co., Inc.* v. *United States*, 41 Cust. Ct. 431, Abstract 62547, I have no quarrel with the decision. I agree that if the gloves in issue are embroidered in any manner they are not entitled to the reduction granted by the General Agreement on Tariffs and Trade, but are, in fact, dutiable at the rate of 90 per centum ad valorem, within the original provisions of paragraph 1529 (a).

What troubles me is the apparent disregard of the distinction made, both in the paragraph, as written by Congress, and in the provision, as modified by the trade agreement negotiators, between embroidery and applique work. The original language reads in part:

* * * fabrics and articles embroidered (whether or not the embroidery is on a scalloped edge), tamboured, appliquéd [or] ornamented [etc.].

The word "ornamented," as used in the modified paragraph 1529 (a), is defined *in haec verba*.

Webster's New International Dictionary of the English Language, second edition, 1951, defines "applique" as—

*adj.* Applied or laid on, as figures cut from one fabric and sewed or pasted on another, lacquer designs added to metalware, etc.; also, done or made in this way; as, *appliqué* work.—*n.* Ornament or ornaments so applied or for so applying.

For various reasons not here material, a more limited definition of the word "applique" has been adopted by customs tribunals. It embraces only—

Ornamentation with a pattern, which has been cut out of another color or stuff, applied or transferred to a foundation.

See *United States* v. *Hamburger Levine Co.*, 5 Ct. Cust. Appls. 217, T.D. 34382; *Loewenthal & Co.* v. *United States*, 6 Ct. Cust. Appls. 209, T.D. 35464; *United States* v. *Greenwald's Linen Importers*, 17 C.C.P.A. (Customs) 241, T.D. 43672.

If the test of the cited definitions be met, seemingly, there is no other limitation upon the figure which is itself the applique. It may be plain or fancy, beaded, spangled, embroidered, or otherwise adorned. Its character derives, not from its appearance, but from the fact that it is cut out from another material and applied to the surface of a fabric for purposes of ornamentation. Clearly, therefore, an embroidered applique continues to be an applique. *Morimura* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941.

Embroidery, on the other hand, contemplates an ornamental stitching, "a superimposed, raised effect, brought about by stitching some character, which by reason of its shape, color or other characteristic, in fact adds ornamental value to the article." *United States* v. *Florea & Co., Inc.,* 25 C.C.P.A. (Customs) 292, T.D. 49396.

To say that an article which is ornamented with an embroidered applique is an embroidered article is to overlook the inherent nature of the ornamentation. It is a deceptive description which fails to apprise that the adornment is a separate entity attached but not incorporated into the substance of the fabric. To identify it as an applique, however, is to show, beyond question, the precise character of the decoration.

Moreover, when Congress made provision for embroidered articles, it saw fit to add the parenthetical phrase "(whether or not the embroidery is on a scalloped edge)." Presumably, therefore, Congress must have believed that without this explanatory phrase an article which had an embroidered scalloped edge would not be considered to be an embroidered article. Otherwise, the added language possesses no sensible meaning. Yet, it may not be assumed that Congress employed superfluous or useless terminology. *United States* v. *C. J. Tower & Sons,* 44 C.C.P.A. (Customs) 1, C.A.D. 626.

If an article with an embroidered scalloped edge is not an embroidered article, unless made so by specific provision, it would seem naturally to follow that an article with an embroidered applique is not an embroidered article, unless specifically so designated.

I do not regard the case of *United States* v. *Hamburgers*, 18 C.C.P.A. (Customs) 114, T.D. 44068, relied upon by the majority, as an authority to the contrary. It does not appear either from the decision itself, nor from the testimony quoted therein, that the embroidery on the hats in issue was confined to the trimmings. The court there referred to the merchandise as hats "embroidered *and* trimmed." [Italics supplied.] When the witness was asked whether the embroidery was on the ornaments or on the hats, he replied, "The embroidery was on the trimming of the hat, and the hat was trimmed with some sort of silk fabric *and* embroidered, and the trimming was of more value than the body of the hat." [Italics supplied.] The court then went on to say, "the question is as to the classification of trimmed hats embroidered." Without more precise indication that the embroidery was confined to the trimming, or that the court took the fact of the placement of the embroidery into consideration, I do not interpret the case as standing for the proposition that an article is embroidered if it is ornamented with an embroidered trimming.

Furthermore, the *Hamburgers* case was decided during the lifetime of the Tariff Act of 1922, and its provision for embroidered articles— paragraph 1430—did not contain the parenthetical phrase "(whether or not the embroidery is on a scalloped edge)."

Since I do not consider the gloves at bar to be embroidered in any manner, I would hold them to be dutiable, as claimed, at the rate of 50 per centum ad valorem, as wearing apparel, ornamented, within the provisions of paragraph 1529(a) of the Tariff Act of 1930, as modified by said General Agreement on Tariffs and Trade.