MORIMURA BROS. *v.* UNITED STATES (No. 94).[1]

COTTON SCREENS IN A FRAMEWORK OF WOOD.

On a review of the statutes and the decisions founded on the statutes, it is held that screens with panels of cotton, ornamented with embroidered designs or with figures appliquéed thereon, were not dutiable as furniture or as a manufacture of cotton under tariff act of 1897, but were dutiable under paragraph 339 of that act at 60 per cent as "other articles" embroidered or appliquéed.

## United States Court of Customs Appeals, October 12, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6605 (T. D. 28204).

[Affirmed.]

*Joseph G. Kammerlohr* (*John Giblon Duffy* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The goods involved in this case are screens, the panels of which are of cotton in a framework of wood. The panels of some of the screens are ornamented with designs embroidered on the cloth and the panels of others with embroidered figures or designs which are appliquéed to the cloth. The collector of customs at the port of New York classified the screens as silk-embroidered articles and assessed them for duty at 60 per cent ad valorem under the provisions of paragraph 390 of the tariff act of 1897, the parts of which material to the case are as follows:

390. Laces, * * * embroideries and articles embroidered by hand or machinery, or tamboured or appliquéed, * * * all of the above-named articles made of silk, or of which silk is the component material of chief value, not specially provided for in this act, * * * sixty per centum ad valorem: * * *.

The importers objected to the classification and the duty imposed, and among other grounds of protest the claim was set up that the goods were dutiable either at 35 per cent ad valorem as house furniture or manufactures of wood under paragraph 208, or at 45 per cent ad valorem as manufactures of cotton under paragraph 322, which paragraphs are as follows:

208. House or cabinet furniture, of wood, wholly or partly finished, and manufactures of wood, or of which wood is the component material of chief value, not specially provided for in this act, thirty-five per centum ad valorem.

322. All manufactures of cotton not specially provided for in this act, forty-five per centum ad valorem

As it appeared on the hearing that none of the screens was made of silk and that all of them were composed in chief value of cotton,

---

[1] Reported in T. D. 31941 (21 Treas. Dec., 253).

the Government admitted that they were not embroidered articles
made of silk or of which silk was the component material of chief
value and that therefore they were not dutiable under paragraph
390, which was the paragraph under which they were assessed for
duty by the collector. The Government claimed, however, that the
rate of duty imposed was correct and should be sustained under the
provisions of paragraph 339, which reads as follows:

339. Laces, lace window curtains, tidies, pillow shams, bed sets, * * * embroideries and all trimmings, * * * wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a letter, monogram, or otherwise; tamboured or appliquéed articles, fabrics or wearing apparel; * * * all of the foregoing, composed wholly or in chief value of flax, cotton, or other vegetable fiber, and not elsewhere specially provided for in this act, * * * sixty per centum ad valorem: Provided, That no wearing apparel or other article or textile fabrics, when embroidered by hand or machinery, shall pay duty at a less rate than that imposed in any schedule of this act upon any embroideries of the materials of which such embroidery is composed.

The board decided that the screens were dutiable under paragraph
339, as claimed by the Government, and the importers appealed.

Counsel for the importers argue that the decision of the board
should be reversed: First, because the screens imported are house
furniture of wood and therefore dutiable under paragraph 208;
second, because the screens are embroidered or appliquéed articles
not of the kind, class, or nature of those mentioned in paragraph 339,
and are therefore not dutiable thereunder; third, because the
screens, if not dutiable as house furniture of wood, are dutiable as
manufactures of cotton not specially provided for under paragraph
322.

Giving to words their strict meaning rather than the signification
resulting from a careless use of them, screens such as those imported
are not house furniture at all, but house furnishings—that is to say,
articles designed more for the ornamentation of the house than for
the personal use or convenience and comfort of its occupants. The
term "furniture" as ordinarily used may mean that with which anything is furnished, supplied, or equipped. House furniture has a
restricted signification, however, which does not cover everything
with which a house may be furnished, supplied, or equipped. House
furniture, in these modern times, has come to denote those articles
of household utility which were formerly made of wood and which
are designed for the personal use, convenience, and comfort of the
dweller. House furnishings, on the other hand, are the subsidiary
adjuncts and appendages of the house, designed for its ornamentation
or which are of comparatively minor importance so far as personal
use, convenience, and comfort are concerned. Chairs, stools, tables,
writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are
truly house furniture, and tidies, pillow shams, bed sets, window

curtains, and ornamental screens are just as truly house furnishings. If we are correct in our conclusion that ornamental screens such as those imported are house furnishings, it can not be said that no articles of the same general class or nature were provided for in paragraph 339. Neither can it be said that no article approximating them in character is therein mentioned. Screens serve practically the same object as window curtains. They shield the occupants of the dwelling or room from light, heat, and observation just as do curtains, and after all in purpose they are really nothing other than framed movable curtains. Therefore, even if the proviso to paragraph 339 be limited as contended to articles which are *ejusdem generis* with the articles previously mentioned therein, it would seem that the provisions of the proviso are applicable to ornamental embroidered screens which are of the same general class, nature, and kind as other house furnishings specifically enumerated and in particular of the same class and kind as window curtains. But however that may be, we think that the legislative history of paragraph 339 is such as to leave no reasonable doubt that Congress intended that the proviso thereto should extend to every embroidered article in the tariff act unless excluded from the operation of the proviso by apt language to that effect, and that the embroidered articles not having been so excluded are dutiable as assessed. Paragraph 373 of the tariff act of 1890 was the prototype of paragraph 339 of the tariff act of 1897 and reads in part as follows:

373. Laces, edgings, embroideries, * * * lace window curtains, and other similar tamboured articles, and articles embroidered by hand or machinery, embroidered and hemstitched handkerchiefs, * * * all of the above-named articles, composed of flax, jute, cotton, or other vegetable fiber, or of which these substances or either of them, or a mixture of any of them is the component material of chief value, not specially provided for in this act, sixty per centum ad valorem: *Provided*, That articles of wearing apparel, and textile fabrics, when embroidered by hand or machinery, and whether specially or otherwise provided for in this act, shall not pay a less rate of duty than that fixed by the respective paragraphs and schedules of this act upon embroideries of the materials of which they are respectively composed.

Under this paragraph of the tariff act of 1890, the board in T. D. 11375 decided that screens composed of a framework of bamboo with a center piece of embroidered silk were, under the testimony, *in chief value of wood*, and therefore dutiable at 35 per cent ad valorem, under paragraph 230 of that act, which provided for house or cabinet furniture of wood, manufactures of wood, or of which wood is the component material of chief value. This at least impliedly held that screens of that character were not covered by the proviso to paragraph 373, declaring that articles of *wearing apparel* and *textile fabrics* when embroidered by hand or machinery, whether specially or otherwise provided for in the act, should not pay a less

rate of duty than that fixed by the respective paragraphs and sched-
ules of the act upon embroideries of the materials of which they
were respectively composed.    In the case of the China & Japan
Trading Co., Ltd. (T. D. 13663), the board found that screens
composed of wood and cotton embroidered, which were assessed at
60 per cent ad valorem under paragraph 373 of the tariff act of
1890, and which were claimed, among other things, to be house
furniture of wood, or manufactures of wood, were *composed in chief*
*value of cotton cloth embroidered* and decided that they were dutiable
as assessed.    In that decision the board took occasion to refer to
its previous decision as to Japanese screens in T. D. 12966, and to
say that the board's remark that screens with silk and cotton panels,
silk chief value, were erroneously classified as embroideries was
*dictum*.    These decisions informed Congress that paragraph 373 of
the tariff act of 1890 was not sufficiently comprehensive to embrace
embroidered articles which were not in chief value of cotton, and
with that information before it, it passed Schedule J of the tariff act
of 1894 and paragraph 276 thereof, which in part reads as follows:

276. Laces, * * * embroideries, * * * lace window curtains, tamboured
articles, and articles embroidered by hand or machinery, embroidered handkerchiefs,
* * * all of the above-named articles, composed of flax, jute, cotton, or other
vegetable fiber, or of which these substances or either of them, or a mixture of any of
them is the component material of chief value, not specially provided for in this act,
fifty per centum ad valorem.

It will be observed that the language in this paragraph was very
broad and in terms covered embroideries, articles embroidered by
hand or machinery, and embroidered handkerchiefs composed of cot-
ton or of which cotton was the component material of chief value, and
not specially provided for.    Nevertheless, if it was the legislative
intention to remedy any of the deficiencies of paragraph 373, Congress
was soon brought to a realization of the fact that that purpose had
not only not been attained, but that embroidered articles of wearing
apparel and embroidered fabrics, if specially provided for, had been
released from the embroidery duty by the omission of the proviso to
paragraph 373 of the tariff act of 1890.    In the case of the United
States *v.* Einstein (78 Fed. Rep., 797–799) the court, speaking of the
proviso to paragraph 373 of the tariff act of 1890, stated that it was
for the purpose of making it certain that *no embroidered article of*
*wearing apparel or embroidered textile fabric*, however named or pro-
vided for in the act, should escape an embroidery duty, and that the
omission of the proviso from the act of 1894 released from the embroid-
ery duty any embroidered article of wearing apparel or embroidered
fabric if it was specially or otherwise provided for in the act.

With this as the status of the legislation in 1890 and 1894, and the
decisions thereunder, Congress was confronted again in 1897 with
the proposition that embroidered articles not specifically subjected

to the embroidery duty, and which were otherwise specially provided for, would escape the duty imposed on articles embroidered with like materials. Accordingly, in the act of 1897 the proviso to the act of 1890 was restored to the tariff act in an amended form, which included not only *wearing apparel* and *textile fabrics,* but other embroidered articles. It is important to note that the language used in the proviso to paragraph ·339 of the act of 1897 was stronger than that employed in paragraph 373 of the act of 1890, and as if to emphasize its intention to subject all embroidered articles to the conditions of the proviso, unless specially excluded, Congress put the proviso in the negative form—that is to say, it provided that "no wearing apparel *or other article* or textile fabrics when embroidered by hand or machinery, shall pay·duty at a less rate than that imposed in any schedule of this act upon any embroideries of the materials of which such embroidery is composed." As "wearing apparel" and "textile fabrics" are general terms and cover ·completely· their respective classes, the words "other article" can not be construed to refer to things *ejusdem generis.* The expression "wearing apparel" comprises all kinds of wearing apparel, "textile fabrics" all kinds of textile fabrics, and to give to the words "or other article" no broader interpretation than that of "other articles of wearing apparel" or "other articles which are textile fabrics" would convert the added enumeration into mere surplusage. The proviso to paragraph 339 of the tariff act of 1897 would thus become practically a replica of the proviso to paragraph 373 of the tariff act of 1890, and we would be put in the position of assuming that the additional language contained in the former gave it no wider signification than that accorded to the latter by the tribunals whose duty it was to interpret it. Such an assumption we can not make without doing violence to what we consider the manifest intent of Congress and a settled rule of statutory interpretation, which has been aptly stated as follows:

The rule of *ejusdem generis* is only a rule of construction to aid in arriving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute as that purpose may be gathered from the whole instrument. Whilst it is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class the general words must be construed as embracing something outside of that class. If the particular words exhaust the *genus* there is nothing *ejusdem generis* left, and in such case the general words must be given a meaning outside of the class indicated by the particular words or it must be said that the general words are meaningless, thus sacrificing the general words to preserve the particular words. In that case the rule of *ejusdem generis* would defeat its own purpose. National Bank of Commerce *v.* Ripley (161 Missouri, 126, 132); United States *v.* Mescall (215 U. S., 26, 31).

Whether the embroidered screens are or are not house furniture of wood, they are articles embroidered by hand or machinery, and not being specially excluded from the operation of the proviso to para-

graph 339, they are dutiable as therein prescribed. Kaufmann *v.* United States (128 Fed. Rep., 468); Lichtenstein *v.* United States (154 Fed. Rep., 736).

Whether the screens which are appliquéed are embroidered articles within the intent of the proviso it is unnecessary to decide. The designs on those screens, instead of being embroidered on the cloth of the screen, appear to have been embroidered separately and then stitched to the screen. They are therefore clearly articles which are appliquéed. It is found by the board and practically admitted by counsel for the importers that all the screens are in chief value of cotton. Wood is not the predominant material in the construction of the screens and serves no other purpose than that of giving them a definite shape and form. The important essential part of the screen is the embroidered or appliquéed cotton cloth, which is both the predominant material and the component material of chief value. As we do not consider the screens as house furniture at all, and certainly not house furniture of wood, we think that the appliquéed screens fall directly within the following language of paragraph 339:

\* \* \* Tamboured or *appliquéed articles,* fabrics, or wearing apparel, \* \* \* all of the foregoing, composed wholly or in chief value of flax, *cotton,* or other vegetable fiber, and not elsewhere specially provided for in this act, \* \* \* sixty per centum ad valorem—

and are therefore dutiable as assessed.

The decision of the Board of General Appraisers is *affirmed.*

De Vries, Judge, having participated in the decision of the board, did not sit.