(C.D. 2099)

DECORATIVE IMPORTS *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 13, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *George R. Tuttle, Jr.*, and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of these protests is described on the invoices as "Peel Beach Chair" or "Rattan Beach Chair." It was assessed with duty at the rate of 45 per centum ad valorem under the provision in paragraph 409 of the Tariff Act of 1930 for—

* * * all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow.

Plaintiff contends that the articles are more specially provided for under the provision in paragraph 412 of the said act, as modified by the Presidential proclamation reported in T.D. 51802, for—

Furniture, wholly or partly finished * * *, wholly or in chief value of wood, and not specially provided for:

| | |
|---|---|
| Chairs | 20% ad val. |
| Other furniture | 12½% ad val. |

Although the protests contain a claim for duty at the rate of 30 per centum ad valorem under the provisions in paragraph 409, as modified by the said Presidential proclamation reported in T.D. 51802, for—

Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind * * *

that claim was not pressed, it being plaintiff's contention that the articles at bar are made in chief value of cane or peel and that, in the case of *Calif-Asia Co., Ltd.* v. *United States*, 39 C.C.P.A. (Customs) 133, C.A.D. 475, our appellate court held that furniture, made wholly or in chief value of cane or peel, was not within the furniture provisions of paragraph 409, but properly classifiable under the provisions of paragraph 412, *supra*, for furniture, wholly or in chief value of wood.

The evidence, including a sample before us as plaintiff's exhibit 1, shows the merchandise to consist of a seat with a back attached. There are no legs, but the front of the seat is elevated about 4 inches more than the back, the effect being to position the sitter firmly against the back of the article when it is in use. The back is so attached to the seat that it may be folded down over the seat and the article easily carried or stored.

The uncontradicted evidence offered by the plaintiff shows that the article is used on the floor or on the ground, indoors or out. Indoors,

such articles are used as seats while viewing television and while dining before low tables. Outdoors, they are used on sun decks, around swimming pools, and on beaches. The record indicates that they are chiefly used outdoors.

There are three issues to be determined—first, whether the articles at bar are embraced within the meaning of the term "chairs"; second, if not, whether they are, nevertheless, embraced within the meaning of the term "furniture"; and, third, if the articles are determined to be "chairs" and/or "furniture," whether they are wholly or in chief value of cane or peel, rather than rattan or bamboo. The meanings to be determined are the common meanings of the terms "chairs" and/or "furniture," there being no contention that the commercial meaning of either term is different from its common meaning.

We are of the opinion that the articles are not "chairs" within the common meaning of that term. Both parties have quoted the definition of the noun "chair," as found in Webster's New International Dictionary, second edition, 1945, as follows:

A seat, usually movable, for one person. It usually has four legs and a back, and may have arms.

Counsel for the plaintiff takes the view that the fact that the definition states that a chair "usually" has four legs is an indication that it does not have to have four legs, or any legs at all. Counsel for the defendant takes the view that the definition indicates that a chair must have four legs or some substitute for the legs.

Our common understanding of the term "chair" accords with that of counsel for the defendant. "Seat" would appear to be the generic term, in which would be included various types of seats, such as benches, stools, chairs, and so on, including, no doubt, the article at bar. ("Seat" also means the particular part of a thing on which one sits, as appears hereinafter. See Webster's, *op. cit.*)

Although we find no dictionary definition which specifically so states, we think in common understanding the features which distinguish a chair from other seats are that it is for one person, always has a back, and has some arrangement which elevates the seat portion above the floor or ground so that a person may conveniently sit on it. While there is a generally accepted standard height that the seat of a chair is usually raised above the floor, we recognize that there are high chairs and low chairs, but we do not think that the elevation of the seat in the article at bar is sufficient to characterize it as a chair.

As was said by its designer and importer, it is a seating unit designed with a back high enough to give support across the shoulders. Although not so denominated by any of the witnesses, we consider it

to be that type of seating unit commonly known as a back rest, or perhaps more properly as a seat with back rest. It is not a chair.

Is it furniture? Counsel for the defendant suggests in .the brief filed in its behalf that if it is not a chair it could not be furniture. As hereinbefore indicated, there are many articles used for seating purposes other than chairs. Many of these, such as benches, stools, etc., would be encompassed by the term "furniture." As this division of the court said in the case of *Necchi Sewing Machine Sales Corp.* and *Barian Shipping Co., Inc.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489:

The term "furniture" is one of broad signification. Webster's New International Dictionary, 2d edition, 1945, contains numerous meanings for the noun, but the definition which seems to convey the meaning in which the term was used in the tariff provision here involved is as follows:

6. Articles of convenience or decoration used to furnish a house, apartment, place of business or of accommodation, etc.; esp., movable articles such as chairs, tables, beds, cabinets, desks, stoves, etc.; as, parlor *furniture;* kitchen *furniture;* office *furniture;*—usually distinguished from the fittings, or permanent adjuncts, such as gas fixtures, sanitary appliances, etc. Styles, ornamentation, etc., in furniture are usually named after the period, or a sovereign reigning, when they were in vogue, as *Renaissance, Empire,* or from their chief maker, as *Chippendale,* etc.

The articles before us certainly are articles of convenience, to wit, seats, which the record shows are sometimes used to furnish a house, although they are chiefly used outdoors, near or away from the house. In our view, they are furniture—perhaps not the usual or conventional kind of furniture; rather, more of an informal or casual type, but, nonetheless, furniture. The provisions for furniture are not limited to indoor furniture, for we recognize that there is such a thing as outdoor furniture, of which, we think, the articles before us are examples. Similarly, the provisions for furniture are not limited to furniture in the formal sense, but embrace the informal and even unconventional types which may be used or in vogue from time to time in a manner similar to the conventional types of furniture.

Counsel for the defendant has cited the case of *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941, for the statement (p. 182) that—

* * * House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped.

In that case, in which the court was discussing the scope of a provision of the Tariff Act of 1897 for "House or cabinet furniture, of wood, wholly or partly finished," the court went on to say:

* * * House furniture, in these modern times, has come to denote those articles of household utility which were formerly made of wood and which are designed for the personal use, convenience, and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of

the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and tidies, pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings.

As hereinbefore noted, the furniture provisions in the Tariff Act of 1930 are not, by statutory language, limited to "House or cabinet" furniture, and certainly encompass outdoor furniture. Adapting the definition of furniture given by our appellate court in the *Morimura Bros.* case, *supra*, to include outdoor furniture, we think the seats at bar are, by their design and use, and under such definition, in the category of furniture, rather than of furnishings or of accessories which are not furniture.

On the issue as to whether the articles at bar are "furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind" provided for in paragraph 409, or are "furniture * * * wholly or in chief value of wood" provided for in paragraph 412, as modified, plaintiff offered the deposition of one Chung Ping Ling, of Kowloon, Hong Kong, a home rattan worker who took orders for the making of such ware from the exporter of the articles at bar during the time of exportation thereof. The obvious purpose of the plaintiff in offering the deposition of Mr. Ling was to establish the cost of the component materials of the articles at bar at the time when they were ready to be joined together to form the imported articles. While the details as to identification of the imported articles with those on which the deponent worked are somewhat sketchy, there was no objection to the receipt in evidence of the deposition, and we are of the opinion that it substantially and sufficiently establishes that the articles at bar are each composed of a bamboo frame made with the use of what the deponent identified as "big bamboo stalks" and webbing of "split rattan" or "rattan splits," the latter being the component material in chief value.

In the brief filed in its behalf, counsel for the plaintiff identifies the "split rattan" or "rattan splits" referred to by the deponent as the "peel" or "cane" referred to in the decision of our appellate court in the *Calif-Asia Co., Ltd.*, case, *supra*. While there is no direct evidence in the case to that effect, the brief of the defendant is silent on the point.

In its decision in the *Calif-Asia Co., Ltd.*, case, the Court of Customs and Patent Appeals distinguished between cane, reed, and rattan, and pointed out that although *cane* and *reed* made from rattan were each separately provided for as materials in the first portion of paragraph 409, *supra*, and that there was provision for furniture, wholly or in chief value of *rattan* or *reed*, there was no provision for furniture, wholly or in chief value of *cane*. Reasoning that the omission of the word "cane" from the provision for furniture in paragraph 409

was deliberate, the court held that Congress did not intend to provide in paragraph 409 for furniture, wholly or in chief value of cane. It was, therefore, held to be properly classifiable under the provision for furniture, wholly or in chief value of wood, in paragraph 412, *supra.*

In its decision in the *Calif-Asia Co., Ltd.*, case, our appellate court pointed out, citing authorities on the subject, that rattan in its natural state has an outer bark or skin and an inner body. The outer skin is known as "cane" or "peel" and is split in suitable widths and used for webbing or for making the seats and backs for furniture. The inner body is known as "reed."

While there is a provision in the first part of paragraph 409, *supra,* for a material denominated as "split or partially manufactured rattan," we do not believe that this was the material to which the deponent had reference when he spoke of "split rattan" or "rattan splits." According to the Summary of Tariff Information, 1921, page 580, split rattan is the inner fibrous tissue, or *reed,* of rattan when it is split into strips used in basketry and braided work. This is obviously a different material from the cane used for the seats and backs of furniture, which, according to the authorities cited in the *Calif-Asia Co., Ltd.*, case, is split from the outer bark or skin of rattan.

An examination of the sample which is in evidence as plaintiff's exhibit 1 is sufficient to demonstrate that the material, other than the frame, of which it is composed, clearly was split from the outer skin, or peel, of rattan and is cane and not rattan, reed, or split rattan.

The deposition establishes that the imported articles were composed in chief value of such cane, and, following the authority of the decision of our appellate court in the *Calif-Asia Co., Ltd.*, case, judgment will issue sustaining the claim for duty at the rate of 12½ per centum ad valorem under paragraph 412, as modified.