(C.D. 2520)

SHELFORD, INC.
WHEELER & MILLER } v. UNITED STATES

United States Customs Court, First Division

(Decided on rehearing [not published] March 29, 1965)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Mollie Strum* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case, imported from Hong Kong and entered at the port of San Francisco on June 15, 1953, is described on the invoice as collapsible peel beach chairs and as peel automobile backrests. It was assessed with duty at 45 per centum ad valorem under paragraph 409 of the Tariff Act of 1930 as articles in part of rattan. The protest claims that "Back rests of peel" are properly dutiable at 30 per centum ad valorem under paragraph 409 of said tariff act, or at 12½ per centum, 16⅔ per centum, or 20 per

centum ad valorem under paragraph 412, as modified. Only the claim for duty at 12½ per centum under paragraph 412 has been pressed at the trial or in the briefs. Defendant has not challenged the sufficiency of the protest.

The entry herein was liquidated on October 14, 1955. The protest was timely filed and was forwarded to this court by the collector on or about March 5, 1956. The case first appeared on the calendar in San Francisco on September 18, 1956. It was partially tried on February 11, 1957, and continued for the purpose of obtaining a commission. The case was thereafter continued from time to time, was abandoned, and then restored to the calendar. The commission was finally issued on July 9, 1962, and was returned on January 18, 1963. It was received in evidence at a hearing on February 6, 1963, at which time the case was submitted. Briefs of the parties were submitted by July 15, 1964. The case was resubmitted to the first division as presently constituted on November 23, 1964, and after today we may hope will rest in peace.

The provisions of the tariff act pertinent to the issue presented are as follows:

PAR. 409. * * * all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem.

[Par. 412, as modified by the General Agreement on Tariffs and Trade, T.D. 51802]. Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

| * | * | * | * | * | * | * |

Other furniture_____ 12½% ad val.

At the trial, plaintiffs called Fred Schlesinger, an officer of Shelford, Inc., the importer of the within merchandise. He stated that he is personally familiar with the merchandise designated on the entry as No. 3358, peel automobile backrests, and No. 3359, collapsible peel beach chairs, and has been familiar with such merchandise for at least 10 years. He produced a sample of item No. 3359, which was received in evidence as plaintiffs' exhibit 1, and a sample of item No. 3358, which was received in evidence as plaintiffs' exhibit 2.

Plaintiffs' exhibit 1 consists of a seat and backrest, composed of woven material attached to a sturdy frame. The two parts are hinged together so that they may fold over each other. The witness said that the frame was of rattan and the woven material of peel. The seat measures approximately 12 inches wide at the back and 15 inches wide at the front. It is a little over 14 inches long. The frame is about 1 inch thick and the woven portion is double. The back measures 12 inches at the bottom and 14 inches at the top. It is about 18 inches high. It is curved backward at the top. The woven portion is single, but

attached to the back of the frame are additional rattan pieces forming a brace which may be adjusted for the convenience of the person using it.

Plaintiffs' exhibit 2 consists of a rattan frame and woven portion almost identical with the back portion of plaintiffs' exhibit 1, except that it does not have a brace.

Mr. Schlesinger testified that his firm deals in home furnishings, furniture, and other accessories and that he has handled the advertising, selling, and merchandising of such items. He has sold automobile backrests and beach chairs in most sections of the country either through showrooms in Chicago, which is the home furnishing center for a great deal of buying, or by direct solicitation. He has made calls personally in New Jersey, the east coast around New England, and the Finger Lakes region in New York. He has seen beach chairs displayed in patio shops along the east coast and has seen them used as seats with backrests, on beaches on the sand, around pools, and on lawns and in parks. He has used one himself in his car. He said that backrests were sold even more in the central part of the United States, Illinois, Indiana, and Ohio, where it gets very hot, and that he had seen them advertised for use in automobiles in almost any area of the United States that gets hot. Such a backrest is used primarily in the driver's section and is put directly behind him so that his back is kept off the upholstery or plastic cover, thus giving a cooling effect while the car is in motion. The witness had also seen such article taken out of the car and used against a tree as a backrest for a person sitting on the grass.

The witness said that the automobile backrest was an added necessity for anyone who drove a car in hot weather; that it is an important asset in a car, and is a wonder for convenience. In his opinion, it is a piece of furniture for a car just the same as the upholstered unit is furniture in an automobile.

Subsequently, the deposition of Wong Kam Wah, taken before the United States vice consul at Hong Kong pursuant to a commission issued by this court, was received in evidence as plaintiffs' collective exhibit 3. Deponent stated that he was the manager of Wo Shun Co. and had supervised the manufacture of backrests sold by that company during 1953. He was familiar with the costs of the materials used and stated that they were as follows:

| Item No. | Rattan cane | Labor in making frame | Peel | Nails |
|---|---|---|---|---|
| 3358 | HK $0. 37½ | HK $0. 25 | HK $0. 90 | HK $0. 02 |
| 3359 | HK $0. 70 | HK $0. 50 | HK $1. 85 | HK $0. 03 |

Plaintiffs claim that both items are furniture and, being in chief value of peel, are properly dutiable under paragraph 412, as modified, as other furniture in chief value of wood. *Calif-Asia Co., Ltd.* v.

*United States*, 39 CCPA 133, C.A.D. 475. It is defendant's contention that the articles are not "furniture" within the common meaning of that term and that plaintiffs have not established that they are in chief value of peel.

Plaintiffs rely on *Decorative Imports* v. *United States*, 43 Cust. Ct. 31, C.D. 2099. The merchandise there was described on the invoices as "Peel Beach Chair" or "Rattan Beach Chair." It consisted of a seat with a back attached. It had no legs, but the front of the seat was elevated about 4 inches more than the back, so that the sitter would rest firmly against the back of the article when it was in use. The back was so attached to the seat that it could be folded over the seat and the article easily carried or stored. Uncontradicted evidence established that such articles were used on the floor, indoors, as seats while viewing television or dining before a low table, but were chiefly used outdoors, on sun decks, around swimming pools, and on beaches. The court held that they were not chairs, since the seat portion was not sufficiently elevated above the floor to so characterize them, but were a type of seating unit commonly known as a backrest or a seat with a backrest. In holding that they fell within the meaning of the term "furniture," as used in the tariff act, the court stated (pp. 34–35):

> The articles before us certainly are articles of convenience, to wit, seats, which the record shows are sometimes used to furnish a house, although they are chiefly used outdoors, near or away from the house. In our view, they are furniture—perhaps not the usual or conventional kind of furniture; rather, more of an informal or casual type, but, nonetheless, furniture. The provisions for furniture are not limited to indoor furniture, for we recognize that there is such a thing as outdoor furniture, of which, we think, the articles before us are examples. Similarly, the provisions for furniture are not limited to furniture in the formal sense, but embrace the informal and even unconventional types which may be used or in vogue from time to time in a manner similar to the conventional types of furniture.

Counsel for the defendant has cited the case of *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941, for the statement (p. 182) that—

> * * * House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped.

In that case, in which the court was discussing the scope of a provision of the Tariff Act of 1897 for "House or cabinet furniture, of wood, wholly or partly finished," the court went on to say:

> * * * House furniture, in these modern times, has come to denote those articles of household utility which were formerly made of wood and which are designed for the personal use, convenience, and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and tidies,

pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings.

As hereinbefore noted, the furniture provisions in the Tariff Act of 1930 are not, by statutory language, limited to "House or cabinet" furniture, and certainly encompass outdoor furniture. Adapting the definition of furniture given by our appellate court in the *Morimura Bros.* case, *supra*, to include outdoor furniture we think the seats at bar are, by their design and use, and under such definition, in the category of furniture, rather than of furnishings or of accessories which are not furniture.

Item 3359 of the instant case, referred to as a beach chair, is very similar to the item described in the *Decorative Imports* case. Defendant distinguishes it on the ground that it had an elevation above the ground of about 4 inches, and there was evidence that the article was used indoors as well as outdoors. These differences are not controlling, in our view, since it is obvious that the two articles are much the same in general construction and are used in about the same way.

The classification of item 3358, described as an automobile backrest, is less clearly established by precedent. According to the record, it is chiefly used in automobiles as an accessory backrest to keep the driver cool in hot weather.

Under the Tariff Act of 1897, which provided for house and cabinet furniture in paragraph 208, it was held that the term "house furniture" had a restricted significance and that ornamental screens were not furniture. *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941. Under the Tariff Act of 1909, it was held that upright 4-cornered baskets standing upon board bottoms, having willow lids, used as shipping baskets or to hold clothes for the laundry, were not willow furniture, since they were not so known in the trade and were not handled by furniture dealers but only by merchants who dealt in baskets. *Krauss & Co.* v. *United States*, 2 Ct. Cust. Appls. 17, T.D. 31574. Under the Tariff Act of 1922, it was held that willow chairs of a style and size often seen in dwelling houses or more generally on the porches of such houses were classifiable as house furniture. *United States Willow Furniture Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 90, T.D. 40938; *United States* v. *Basket Importing Co. et al.*, 15 Ct. Cust. Appls. 161, T.D. 42220.

Under the Tariff Act of 1930, the following items have been held to be furniture: Pews and pew fronts, although secured to the floor after importation (*St. Francis Xavier Church* v. *United States*, 27 Cust. Ct. 215, C.D. 1373); sewing-machine cabinets (*Necchi Sewing Machine Sales Corp. et al.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489); sewing-machine treadle stands (*Edward S. Zerwekh Company* v. *United States*, 34 Cust. Ct. 346, Abstract 58989); rattancore tabletops (*United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699); sets of parts which, when assembled, may be fastened to walls

and used as shelves for books (*Fabry Associates, Inc.* v. *United States,* 45 Cust. Ct. 88, C.D. 2203) ; picnic sets (*Canton Son, Inc.* v. *United States,* 48 Cust. Ct. 375, Abstract 66580).

In the *Quon Quon* case, *supra,* our court of appeals pointed out that the determination of whether the imported articles were baskets or tabletops depended upon the purpose for which they were designed and the use to which they were actually put.

In *Canton Son, Inc.* v. *United States, supra,* the merchandise consisted of a wooden box, containing four wood and canvas stools. The box, when opened, formed a tabletop, to which were attached folding wooden legs. The outfit was provided with fasteners and a leather handle so that, when folded and the stools placed inside, it could be carried about. It was primarily used as a table and seats at outdoor picnics, and, secondarily, in any place where an extra table and seats might be needed. Defendant claimed that the articles were not within the character of those Congress intended to embrace in the provision for "furniture." The court held to the contrary, stating (p. 376) :

Basically, the question before us is whether the merchandise at bar is of such a nature that it is or is not included within the common meaning of the term "furniture," as used in the tariff act. We do not think that the aids to our understanding of the meaning of that term, which have been cited by the defendant, demonstrate an intention on the part of Congress to exclude merchandise such as that at bar from the furniture provision in the present tariff act. The citations are generally referable to the tariff designation "house or cabinet furniture," which was the designation which appeared in paragraph 176 of the Tariff Act of 1913 and paragraph 410 of the Tariff Act of 1922. The limitation "house or cabinet" was dropped in the revision of the tariff which became the Tariff Act of 1930.

The articles before us primarily serve as furniture, i.e., as a table and seats. The fact that they are foldable and portable and are generally denominated as "picnic sets" does not change their character and use to anything other than furniture. Applying the principles of the *Quon Quon* and *Decorative Imports* cases, we find the articles in question to be furniture, other than chairs, and to be properly classifiable as claimed at 11 per centum ad valorem under paragraph 412, as modified.

In the Summary of Tariff Information, 1929, it is stated :

House or cabinet furniture in chief value of wood embraces a variety of articles such as chairs, tables, desks, lounges, sofas, book cases, bureaus, chiffoniers, beds, washstands, etc. [P. 955.]

The furniture so classified [furniture of rattan, etc.] consists of a wide variety of chairs, settees, and tables, either as single pieces or as suites. [P. 943.]

The Summaries of Tariff Information, 1948, volume 4, schedule 4, contain the following :

The wood furniture other than bentwood covered in this summary includes chairs and all other articles of household, office, public building, institutional

and professional furniture, and certain office and store fixtures and partitions. [P. 83.]

Furniture of rattan * * * now consists chiefly of seating and lounging pieces, principally for porch, summer home, and recreation use; formerly it had more general use. [P. 69.]

But, note the following:

This summary on miscellaneous manufactures of rattan, bamboo, and osier or willow does not cover furniture or baskets made of those materials, * * *. The products which are here considered include many kinds of novelty and utility articles such as * * * *backrests* * * *. [P. 71, emphasis supplied.]

Although not controlling here, it is to be noted that the definition of "furniture" in the Tariff Schedules of the United States, schedule 7, part 4, subpart A, states:

1. For the purposes of this subpart, the term *"furniture"* includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture, even though designed to be fixed to the wall or to stand one on the other; * * *.

The backrests here involved are of a more sturdy character than the tidies, pillow shams, bed sets, window curtains, referred to in the *Morimura* case as furnishings and not furniture. Although used primarily in automobiles, they are used for a purpose for which articles commonly known as furniture are used, namely, to support the back of a seated person. When the Congress intended to confine the term "furniture" to house furniture, it said so. Without such a limitation, the term cannot be restricted to articles for use in any particular environment. On the basis of the sample itself, as well as the testimony, we hold that these items fall within the meaning of the term furniture, as used in the tariff act.

It is clear from the testimony of Mr. Schlesinger that these articles are made of rattan and peel and are fastened together with nails. It is also clear from the deposition of Wong Kam Wah that the cost of the peel was greater than the cost of the rattan, whether or not the cost of labor in making the frame is included in the cost of the rattan. Since the articles are in chief value of peel, they are dutiable at 12½ per centum ad valorem under paragraph 412, as modified, *supra*, as furniture in chief value of wood. *Calif-Asia Co., Ltd.* v. *United States, supra.*

The protest is sustained and judgment will be rendered for the plaintiffs.