UNITED STATES *v.* SHELFORD, INC., WHEELER AND MILLER (No. 5211)*

United States Court of Customs and Patent Appeals, May 12, 1966

*C.A.D. 876.

54

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *James S. O'Kelly* for the United States.

*Glad & Tuttle* (*Edward N. Glad, George R. Tuttle*, of counsel) for appellees.

[Oral argument April 5, 1966 by Mr. Vance and Mr. Glad]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Associate Judges

ALMOND, Judge, delivered the opinion of the court:

▉ The United States prosecutes this appeal from the decision and judgment of the United States Customs Court, First Division, 54 Cust. Ct. 130, C.D. 2520, insofar as that decision and judgment apply to the merchandise herein described as automobile backrests.

Before the Customs Court in this case were two different articles of merchandise: "collapsible peel beach chairs" and "peel automobile backrests." The Collector of Customs classified both items under paragraph 409 of the Tariff Act of 1930 as articles in part of rattan, and assessed duty thereon at 45 per centum ad valorem. Appellees' protest advanced several claims, the principal one, which the Customs Court sustained, being that both items of merchandise were properly classifiable under paragraph 412 of the same act, as modified by T.D. 51802, as furniture wholly or in chief value of wood, with duty at 12½ per centum ad valorem.

This appeal relates only to the Customs Court's finding that the automobile backrests herein are furniture and properly dutiable as such under paragraph 412.

Paragraph 409 of the Tariff Act of 1930 provides, in pertinent part, as follows:

* * * all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem.

Paragraph 412 of the same act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, provides, in relevant part, as follows:

Furniture, wholly or partly finished, and parts thereof, wholly in chief value of wood, and not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other furniture_____ 12½% ad val.

Appellant questions the finding below on two grounds:

(1) that the subject goods are not furniture, and (2) that the subject goods are not in chief value of wood. We agree with the first stated ground and thus need not reach the second ground. We hold that there is lacking substantial evidence to support the classification of the subject goods as "furniture."

In order to convey a description of the subject goods, we set forth the description given by the court below for both the "collapsible peel beach chairs" and the "peel automobile backrests."

Plaintiffs' exhibit 1 [beach chair] consists of a seat and backrest, composed of woven material attached to a sturdy frame. The two parts are hinged together so that they may fold over each other. The witness said that the frame was of rattan and the woven material of peel. The seat measures approximately 12 inches wide at the back and 15 inches wide at the front. It is a little over 14 inches long. The frame is about 1 inch thick and the woven portion is double. The back measures 12 inches at the bottom and 14 inches at the top. It is about 18 inches high. It is curved backward at the top. The woven portion is single, but attached to the back of the frame are additional rattan pieces forming a brace which may be adjusted for the convenience of the person using it.

Plaintiffs' exhibit 2 [backrest] consists of a rattan frame and woven portion almost identical with the back portion of plaintiffs' exhibit 1, except that it does not have a brace.

The sole witness was Mr. Fred Schlesinger, vice-president of Shelford, Inc., the importer of the subject merchandise. Mr. Schlesinger testified that the automobile backrests were sold principally in the central part of the United States. The merchandise is used in automobiles, primarily in the driver's section where it is placed behind one's back, thus keeping it off the upholstery or plastic cover of the car seat. The purpose of the automobile backrest, in the words of Mr. Schlesinger, is "for cooling, more comfortable seating during the hot days." The witness stated that the automobile backrest was not a chair. When asked whether he believed that the automobile backrest "is an article of convenience to furniture," the witness replied:

The automobile back rest, [I] think it is an added necessity for anybody who has ever driven in hot weather. It is certainly an important asset in a car. Today they are using different units, but the peel back rest in particular was the wonder for convenience.

This response was followed by a colloquy between the presiding judge and the witness:

Judge Wilson: How would you classify it, as a convenience furniture?
The Witness: It would be a piece of furniture, just like you'd have the cushions in a car. I call the full upholstered unit in the car, furniture.
Judge Wilson: It would be furnishings rather than furniture?
The Witness: Furnishings take in a broad scale.

Appellant relied below on the case of *Morimura Bros.* v. *United States*, 2 Ct. Cust. App. 181, T.D. 31941, wherein the Court distinguished house furniture from furnishings as follows:

House furniture, in these modern times, has come to denote those articles of household utility which were formerly made of wood and which are designed for the personal use, convenience, and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and tidies, pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings. * * *

Although the tariff provision involved in *Morimura Bros.* (paragraph 208 of the tariff act of 1897) was restricted to house or cabinet furniture and in that respect differs from paragraph 412, supra, we agree with the tenor of that decision insofar as it distinguishes between "furniture" and "furnishings."

The court below distinguished the backrests, the subject of the litigation here, from the furnishings recited in *Morimura Bros.* as follows:

> The backrests here involved are of a more sturdy character than the tidies, pillow shams, bed sets, window curtains, referred to in the *Morimura* case as furnishings and not furniture. Although used primarily in automobiles, they are used for a purpose for which articles commonly known as furniture are used, namely, to support the back of a seated person. When the Congress intended to confine the term "furniture" to house furniture, it said so. Without such a limitation, the term cannot be restricted to articles for use in any particular environment. On the basis of the sample itself, as well as the testimony, we hold that these items fall within the meaning of the term furniture, as used in the tariff act.

While we agree that the backrests are more sturdy than tidies and pillow shams, we don't believe this difference distinguishes furniture from furnishings. ▇ The determinative factor, we think, is the use to which an item is put—the question being whether the goods function as furniture. *United States* v. *Quon Quon Co.*, 46 CCPA 70, C.A.D. 699. Here we think the goods function as an accessory to furniture rather than furniture itself. While the backrests support the back, they do so in only a limited sense as a secondary rather than a primary support. The backrests, unlike the peel beach chairs involved in the litigation below, are not self-supporting but must be used much as a pillow or cushion is used. As such, we think that in ordinary terminology the backrests are more properly denominated furnishings rather than furniture.

In support of our holding that the subject goods are not furniture as contemplated by the tariff statute, we cite the following excerpt from Summaries of Tariff Information, 1948, Vol. 4, Schedule 4:[1]

> This summary on miscellaneous manufactures of rattan, bamboo, and osier or willow does not cover furniture or baskets made of those materials, or such semi-manufactured derivatives of rattan as reed, cane, and cane webbing. Moreover, various other tariff provisions more specifically cover articles of which rattan, bamboo, or willow may be component materials. The products which are here considered include many kinds of novelty and utility articles such as garden rakes, paper lanterns, baloon sticks, games, tricks, and other carnival novelties; bird cages; trays, coasters, mats, and other tableware; dryers, hangers, and stretchers; fly swatters; carpet beaters, handles, stakes, *back rests*, wickered bottles, trellis, tennis-racket frames, etc. * * * [Emphasis ours.]

For the foregoing reasons, the judgment of the Customs Court is accordingly *reversed*.

SMITH, J., concurs in the result.

---

[1] Comment on Par. 409—Manufactures of Rattan, Bamboo, or Willow, N.S.P.F.