(C.D. 4638)

Nevco Furniture Corp. *v.* United States

Court Nos. 70/45322, etc.

(Decided February 23, 1976)

*Siegel, Mandell & Davidson* (*Brian S. Goldstein* of counsel) for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the defendant.

Re, Judge:   The question presented in this case pertains to the proper classification, for customs duty purposes, of five models of merchandise described on the invoices as valets with seats and valet stands. The merchandise was classified under item 727.30 of the Tariff Schedules of the United States as:

"Furniture, and parts thereof, not specially provided for:
*      *      *      *      *      *      *
    Of wood:
*      *      *      *      *      *      *
        Other:
            Chairs"

It was, consequently, assessed with duty at the rate of 15 per centum ad valorem.

Plaintiff contests that classification, and claims that the imported articles are not chairs, but valets, designed and used for the specific purpose of holding clothing and articles, and, therefore, are properly classifiable under item 727.35 of the tariff schedules as:

"Furniture, and parts thereof, not specially provided for:
*      *      *      *      *      *      *
    Of wood:
*      *      *      *      *      *      *
        Other:
*      *      *      *      *      *      *
            Furniture other than chairs"

Hence, plaintiff contends that the lawful rate is only 9 per centum ad valorem.

Defendant denies the validity of plaintiff's claim and asserts that the merchandise has been properly classified. It not merely relies upon the presumption of correctness that attaches to the classification of the Customs officials, but has also introduced evidence in support of the classification. Defendant contends that plaintiff has failed to bear its burden of proof, and, as stated in its brief, that the evidence of record and the applicable law, support the classification of the merchandise as "chairs" under item 727.30 of the tariff schedules.

Samples of the controverted merchandise (plaintiff's collective exhibit 1) consist of articles having four legs, a seat, a back, and a removable combination pants bar, utility tray, and coat hanger. Item 652 (exhibit 1D) is of wood with a cane seat; items 669 (exhibit 1C) and 666 (exhibit 1A) have cane backs and cushioned seats; and item 657 (exhibit 1B) has a nonremovable hanger and a storage compartment under the seat.

In addition to plaintiff's illustrative samples, the record consists of two exhibits submitted by plaintiff and two by defendant, as well as the testimony of five witnesses, two for plaintiff and three for defendant. Defendant's exhibits consist of advertisements of valet chairs by Nevco (defendant's collective exhibit A) and Pearl-Wick (defendant's collective exhibit B)—which describe the articles as chairs by day, valets by night. This literature, distributed by plaintiff to the trade, not only refers to the articles as "chairs," but also describes them as "attractive" and "comfortable" chairs. It indicates that the merchandise is represented as having an easily removable combination tray, pants bar, and coat hanger attachments, which, when removed, cause the merchandise to appear indistinguishable from an ordinary chair. Specifically, this promotional material states clearly that the merchandise "converts to a chair by simply removing tray and hanger assembly"; "tray and hanger are easily detached to convert into an attractive chair by day"; and "top of hanger, tray and pants bar are easily detached to give you a comfortable chair by day."

The testimony and an examination of the articles leave no doubt that they were designed to support a person in a sitting position and are, in fact, so used.

Both of plaintiff's witnesses testified that the primary or predominant function of the merchandise was to hang and store clothing and other objects. Plaintiff's first witness, Mr. Nevai, the past president and founder of plaintiff corporation, testified that for about 15 years his company has imported and marketed the valet chairs as items which could "carry, for night, the clothing, neatly." Plaintiff's second witness, Mr. Mullin, agreed with Mr. Nevai and stated that the

special function of the merchandise is the storage of clothes, i.e., "trying to teach neatness and orderliness." Notwithstanding his company's advertisements, Mr. Nevai testified that the merchandise was not made to be sat upon, and that sitting upon it would be very uncomfortable.

On direct examination both of plaintiff's witnesses agreed with the definition that "a chair is for one person, always has a back, and some arrangement which elevates the seat portion above the floor." Although Mr. Mullin testified that the purpose of the merchandise was the storage of clothes, he admitted that it came within the quoted definition of a chair. Mr. Nevai, however, did not believe that the merchandise came within the definition because of the low height of the seat, the weak construction of the back, and the construction of the legs.

The testimony of defendant's three witnesses dealt with their personal ownership and use of the merchandise. Mr. Skrastins, defendant's first witness, testified that he owns a valet chair similar in all material respects to plaintiff's exhibit 1B. He stated that he uses it every workday to hang clothes and to sit when he puts on and takes off his shoes and socks. He previously owned a "valet stand," i.e., a valet without a seat, but purchased the "valet with the seat" because he needed a place to sit, other than on the bed.

Mr. Polansky, defendant's second witness, testified that he owns a model identical to plaintiff's exhibit 1C. He uses it to hang clothing for storage, to sit when he takes off his shoes and socks, to polish his shoes (since he stores his brushes and shoe polish in the valet), and to watch television when he has company. He added that, when seated on the merchandise, he has no fear of leaning back, breaking it or hurting himself.

Defendant's third and last witness, Mr. Babb, stated that he owns a valet chair "essentially the same as shown in Plaintiff's Collective Exhibit 1 in that it contains four legs, a back, a tray at the top portion, a seat and a compartment under the seat." He has owned it for five years and has used it daily to hang clothes, and to store things that he carries in his pocket. He also sits on it while putting on or taking off shoes, socks, pants, or undergarments, and while shining shoes, watching television or just relaxing. In answer to the question "under what circumstances do you use it for sitting," he responded in part: "I have used the article while watching television, which is in my bedroom, and there have been occasions when I've just sat in it and had a discussion with my wife or just rested in it." He added that his wife and two children also sit on it.

At the request of defendant's counsel, the witness, who weighs approximately 185 pounds and is six feet three inches tall, was asked

to select from plaintiff's illustrative samples the article of merchandise that was "similar" or "more similar" to the one owned by the witness. Having selected plaintiff's exhibit 1C, the witness was asked "to actually sit," and "lean back on the back portion" of the merchandise. In answer to the question: "Do you find this chair uncomfortable?", the witness responded: "I find it no more uncomfortable than any straight-backed kitchen chair, for that matter."

It is basic to customs jurisprudence that a presumption of correctness attaches to the classification of the district director of Customs. The applicability and effect of the presumption, now statutory, require no extended discussion. 28 U.S.C. 2635 (1970). Suffice it to say that to overcome this presumption, the plaintiff must bear a dual burden: to prove that the assigned classification is erroneous, and that the claimed classification is correct. See *United States* v. *New York Merchandise Co.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970).

It is to be noted that both of the competing tariff provisions deal with furniture. The question presented, however, is whether plaintiff has succeeded in establishing that they are not "chairs" within item 727.30 of the tariff schedules, but rather, are "other than chairs" under item 727.35 of the schedules. Simply stated, are the valet chairs "chairs," or "other than chairs" for customs duty purposes?

It is the determination of the court that plaintiff has failed to bear its burden of proof that the merchandise was improperly classified as "chairs," and that it should have been classified as "furniture *other than chairs.*" (Emphasis added.)

The question whether imported merchandise is to be classified as "chairs" for tariff purposes is not one of novel impression. This court, in *Decorative Imports* v. *United States*, 43 Cust. Ct. 31, 33, C.D. 2099 (1959), held that:

> "* * * the features which distinguish a chair from other seats are that it is for one person, always has a back, and has some arrangement which elevates the seat portion above the floor or ground so that a person may conveniently sit on it."

The description of a chair was quoted and applied by this court in *Continental Forwarding, Inc.* v. *United States*, 45 Cust. Ct. 312, Abs. 64682 (1960). In the *Continental Forwarding* case the merchandise known as potty chairs, children's training seats or children's folding nursery chairs, had been classified by the Customs officials as "chairs" within the Tariff Act of 1930. Plaintiff claimed that the articles, commonly known as "potty chairs," were not chairs in the tariff sense, and should have been classified as furniture, other than chairs. It was agreed that the articles were "used primarily for the training of small children." It was also clear that the importations had "a seat

which may be placed over the opening and the article used for ordinary seating purposes."

Plaintiff contended that the potty chair "is something more than a seat, but is a commode or toilet facility." In support of its contention it cited the "principle that when special features are incorporated in the construction of an imported article to fit it for multiple uses, the article is no longer encompassed by a statutory provision which would have provided for the article were it not for the special features." 45 Cust. Ct. at 313.

It is significant that plaintiff's contention that the "potty chairs" were not chairs was explicitly set forth and considered by the court. The court summarized plaintiff's argument as follows:

"In essence, then, plaintiff's argument is that when an article which is in form a chair has a primary use other than that of merely being a seat, it cannot be considered a chair—at least, for tariff purposes." *Ibid.*

The statement of plaintiff's position was categorically denied with the following words: "With this argument, we cannot agree * * * ."

The court quoted from the description of a chair, as found in the *Decorative Imports* case and stated:

"It would seem that it is a feature of every chair that one may sit on it, but this is not to say that mere sitting is the primary purpose of every chair. As pointed out in the definition of the noun 'chair,' in Funk & Wagnalls New Standard Dictionary, 1942, chairs are frequently named for the purpose for which they were designed—dentists' and barbers' chairs being cited as examples. In the case of such chairs, the fact that one is seated is merely incidental to the primary purpose of having dental or tonsorial work performed." 45 Cust. Ct. at 313.

The court noted that "the analogy [of the dentists' and barbers' chairs] carries over sufficiently to the articles in the case at bar [the potty chairs] to fix their character as chairs." Significantly, the court added:

"The fact that their primary purpose is to train children and that it is only incidental to such training that the trainee is seated thereon does not, in our view, require that they be considered as *other than chairs.*" (Emphasis added.) 45 Cust. Ct. at 313–14.

The court's view of the classification of the potty chairs is worthy of repetition:

"The article at bar is in form a chair and has the use of a chair, viz, to be sat upon. The fact that while the occupant is seated something else is done does not cause it to lose its status as a chair and endow it with such a name or character as compels it to be regarded as an article entirely different from a chair." 45 Cust. Ct. at 314.

The conclusion of the court, in the *Continental Forwarding* case, is particularly applicable here. In referring to the many different forms of chairs, and the *eo nomine* principle of customs law, the court stated:

"In our view, the term 'chair' is one covering a great many different forms of the article. The article at bar is one of those forms, and, if any rule of classification is controlling in the matter, it is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of the article. *Nootka Packing Co. et al. v. United States*, 22 C.C.P.A. (Customs) 464, 470, T.D. 47464. None of the exceptions to the rule have been made apparent here." 45 Cust. Ct. at 314.

Consequently, after specifically considering the "more than" doctrine of customs law, the court nevertheless sustained the classification of the potty chairs under the *eo nomine* designation as chairs, and overruled the claim that they were furniture, other than chairs.

In the case at bar, plaintiff claims that the valet chairs should not have been classified as "chairs" but rather as "furniture other than chairs." It cannot be doubted that the *Continental Forwarding* case supports the customs classification and is authority to the contrary. Notwithstanding the "primary purpose" of the merchandise, the potty chairs came within the broad category of "chairs." Furthermore, the promotional materials in that case referred to the merchandise as chairs, thereby refuting the importer's claim that it was furniture, *other than chairs*. The same, of course, may be said in the case at bar because the evidence here is irrefutable that the valet chairs also are offered to the public as chairs.

The issues presented in the *Continental Forwarding* case were again presented and decided in the case of *Morris Friedman v. United States*, 48 Cust. Ct. 373, Abs. 66579 (1962), *aff'd* 50 CCPA 53, C.A.D. 819 (1963), which also dealt with potty chairs. The trial court described the merchandise as "[c]hairs in all material respects similar to those" in the *Continental Forwarding* case "except that the chairs in the *Continental* case had a lid [or cover], which might be placed over the opening, thus allowing the article to be used for ordinary seating purposes." 48 Cust. Ct. at 374. Since the potty chairs in the *Morris Friedman* case did not have a lid, the importer attempted to distinguish them from those in the *Continental Forwarding* case, and, among other things, indicated that they were "uncomfortable and probably not sat upon by choice."

In sustaining the classification of the merchandise as chairs, this court stated that it found "no reason for departing from the rule of our decision in the *Continental* case." The court decided that none of

the reasons urged by the importer had "anything to do with the fact of whether an article is or is not a chair" and stated:

> "Location, reason for use, state of dress of the user, and degree of comfort while using do not add to or detract from the character of an article as a chair, and, in the case of the articles before us, the presence or absence of a lid covering the opening in the seat is similarly inconsequential. It is clear that the decision in the *Continental* case was not based upon the occasional use of the article with the lid down, but upon its primary use, which is the use of the articles before us." *Ibid.*

In affirming the judgment of the trial court, and sustaining the classification of the merchandise as chairs, the Court of Customs and Patent Appeals quoted extensively from the *Continental Forwarding* case and expressly adopted its reasoning. The following statements from the opinion of the Court of Customs and Patent Appeals in the *Morris Friedman* case represent an authoritative restatement of the law on the dutiable status of chairs:

> "We think the reasoning of the court in the *Continental Forwarding* case * * * is applicable to the instant case. It is a matter of common knowledge that the noun 'chair' covers a broad gamut of varieties. The fact that the chair at bar is designed and primarily used for a specific purpose does not relieve it of its dominant characteristics so as to remove it from the encompassing category to which it belongs or its common acceptation as a chair. Chairs are frequently named for the purpose for which they are designed. Whatever the designative or descriptive nomenclature applied as indicative of primary purpose and use, the appellation 'chair' still obtains." 50 CCPA at 55.

The appellate court agreed, and quoted extensively from the opinion of the Customs Court that the absence of a cover or lid did not render the reasoning of the *Continental Forwarding* case inapplicable.

These decisions declare with authority that "the noun 'chair' covers a broad gamut of varieties"; further, that a chair is for one person, has a back, a seat raised above the ground, and is used for sitting. If imported merchandise is in the form of a chair, it is classifiable under the *eo nomine* provision for "chairs," and not as "furniture other than chairs." Furthermore, if the merchandise is in the form or configuration of a chair, the cases show that it is of no consequence that it is also used for a purpose in addition to that of sitting.

When applied to the valet chairs at bar the judicial authority discussed leads to the conclusion that, regardless of the change or modification brought about by the addition of an easily removable combination hanger, pants bar, tray attachment,* and in some articles,

---

*Defendant, in its post-trial brief, points out that the merchandise in the *Morris Friedman* case likewise had "easily detachable trays similar to and adaptable for the same purpose as the trays which form part of children's high chairs." 50 CCPA at 54.

a storage space under the seat, the essential form or character of the merchandise is still that of a chair. If the merchandise has the physical attributes of a chair, is recognizable as a chair, and is in fact used for sitting, it is dutiable as a chair. The cases also show that additional factors such as height of the seat from the floor, nature of construction and comfort, do not alter its classification for tariff duty purposes.

Plaintiff, in its post-trial brief, concisely summarizes its argument in two point headings. It asserts that "the merchandise in issue is not classifiable within the *eo nomine* provision for chairs," and that "the merchandise in issue is more than a chair." Whether merchandise is to be classified under an *eo nomine* designation of the tariff schedules, or whether the *more than* doctrine of customs law requires a different classification, are questions common to many customs classification cases. The doctrines are well known and have been applied in many cases. See cases cited in *United Carr Fastener Corp.* v. *United States* (*Northern Screw Corp., Party in Interest*), 54 CCPA 89, C.A.D. 913 (1967) and *Robert Bosch Corp. et al.* v. *United States,* 63 Cust. Ct. 96, C.D. 3881 (1969). As indicated by Judge Almond, however, "* * * each case must in the final analysis be determined on its own facts." *E. Green & Son (New York), Inc.* v. *United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F. 2d 1396 (1971).

In customs classification cases it is crucial to determine the competing tariff provisions. The proper classification of imported merchandise often depends upon the specific language of the pertinent provisions. Therefore, the question presented is not simply, as phrased by plaintiff, that the valet chair is "more than a chair." The question, rather, is whether the valet chairs are "other than chairs" and, therefore, classifiable under the claimed provision for furniture. Since both competing tariff provisions deal with furniture, it seems clear that the more appropriate tariff provision is the one that describes the item more specifically. See General Interpretative Rule 10(c) and authorities cited in *W & J Sloane, Inc.* v. *United States,* 76 Cust. Ct. 62, C.D. 4636 (1976).

Since the *Decorative Imports, Continental Forwarding* and *Morris Friedman* cases are authority contrary to the position urged by plaintiff, it should be indicated that they were decided under paragraph 412 of the Tariff Act of 1930. It is important to note, however, that the language of that provision is practically identical to that of items 727.30 and 727.35 of the present tariff schedules. Nothing has been shown or has been found that would indicate a change of legislative attitude. Under the doctrine of legislative ratification of the judicial interpretation of a statute reenacted without material change, the decisional law prior to statutory reenactment continues to be applicable and authoritative. *United States* v. *D. H. Grant & Co., Inc.,*

47 CCPA 20, 27, C.A.D. 723 (1959); *Sears, Roebuck and Co.* v. *United States*, 46 CCPA 79, 83, C.A.D. 701 (1959). See also dissenting opinion of Mr. Chief Justice Stone in *Girouard* v. *United States*, 328 U.S. 61, 70, 66 S.Ct. 826 (1946). Hence, the decisional law governing the classification of "chairs" under the Tariff Act of 1930 is equally applicable to the dutiable status of "chairs" under the Tariff Schedules of the United States.

Defendant, in its brief, suggests an additional reason in support of the classification. It points out that Congress, in item 727.35 of the tariff schedules, has specifically described the merchandise embraced thereunder as "furniture *other than chairs*" (emphasis added). There is merit to the suggestion that the terminology, which is unlike other tariff provisions where merely the word "other" is used, was intended to indicate that merchandise, which, because of its shape, structure or form, came within the description of a "chair," was not to be classified under the provision for "furniture, other than chairs."

Based upon the evidence of record, it is the determination of the court that plaintiff has failed to bear its burden of proof that the valet chairs at bar have been incorrectly classified, and that they should have been classified under item 727.35 as "furniture other than chairs."

The record, and the applicable decisions of this court and the Court of Customs and Patent Appeals, support the classification of the merchandise as "chairs" under item 727.30 of the Tariff Schedules of the United States.

In view of the foregoing, the protests are overruled and the classification of the Customs officials is sustained.

Judgment will issue accordingly.