**WARREN ATLANTIC, INC.**
**v.**
**UNITED STATES.**
**C.D. 3250; Protest 65/893–4836–63.**

United States Customs Court,
First Division.
Jan. 15, 1968.

John D. Rode, New York City, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman and Owen J. Rader, New York City, trial attorneys), for defendant.

Before WATSON and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise involved in this case consists of wastepaper baskets and letter trays in chief value of wood, imported from Sweden and Denmark during October 1962. The articles were assessed with duty at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, 84 Treas.Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas.Dec. 138, T.D. 52476, as manufacturers in chief value of wood, not specially provided for. It is claimed that the articles are properly dutiable at 10½ per centum ad valorem under said paragraph 412, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as furniture.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 412, as modified by T.D. 52373 and T.D. 52476:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

    \*   \*   \*   \*   \*   \*

Other (except

    \*  \*  \*) ........16⅔% ad val.

Paragraph 412, as modified by T.D. 54108:

Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

    \*   \*   \*   \*   \*   \*

Other furniture....10½% ad val.

The record presented consists of the testimony of one witness for the plaintiff and two exhibits. The defendant presented no witness and introduced no exhibits. Exhibit 1 is a round, cone-

shaped, wastepaper basket of walnut. It measures 7¼ inches in diameter at the bottom, 10½ inches in diameter at the top, and is 15¾ inches high. Exhibit 2 consists of a walnut letter tray, 15½ inches long, 9¾ inches wide, and 1 inch deep.

The sole witness was Peter Rees, manager of Warren Atlantic, Inc., plaintiff in this case. He testified that he has been with the firm for 16 years and that it is engaged in the importation and manufacture of furniture. He had been familiar with merchandise such as that involved herein for 13 to 14 years. He had used such items himself in his office and had seen them used on many occasions in offices or in homes. He said that exhibit 1 is placed on the floor and is used as a wastebasket. It is a self-supporting item which serves its own purpose and is not used in conjunction with other items. It matches, or blends, or goes with other furniture in the room. He had regularly used and seen an item such as exhibit 2 used as a letter tray in offices. It normally stands on a desk. Both articles are primarily utilitarian, although they are also pleasing in appearance.

Mr. Rees testified that, although he is manager of the plant, he also sells at shows and to certain accounts and over the telephone. He said that his firm sells items such as exhibits 1 and 2 throughout the United States to both wholesalers and retailers. They are sold mostly to furniture stores, particularly office furniture stores. The witness testified that he had visited furniture stores in the course of his experience, had attended office furniture shows in the Coliseum annually, and had done business with furniture dealers. His firm has sold merchandise like exhibit 1 in quantities of "Tens and twenty thousands yearly." When he sells items like exhibits 1 and 2, they are sold as office furniture. Based on his personal observations of their use and his familiarity with the furniture trade, he said that items such as exhibits 1 and 2 are furniture. In his experience, such items are made by furniture manufacturers and are part of a furniture dealer's line of merchandise. He said that there is a distinction between items of furniture and items which are accessories but failed to state what that distinction was.

The witness testified that exhibits 1 and 2 are designated as office furniture in the market place, in advertisements, by salesmen, and by his firm. He had seen items such as exhibits 1 and 2 advertised to the trade as furniture. His firm had advertised them in a trade magazine called "The Contract Magazine," but he did not recall the issue. He did not remember whether the words "office furniture" were used alongside a picture of the articles, and thought exhibit 1 was advertised as "wastebaskets imported from Sweden." While his firm designates the whole line as office furniture, on bills of sale the individual items are described by name or number. Based on his familiarity with the items handled by furniture dealers, it was his opinion that not everything offered as part of a furniture dealer's line was furniture. He said that desks, office chairs, and tables are furniture but that he would not consider a desk ashtray as furniture.

He also testified as follows:

Q. Would you consider an apt description of Exhibit 1 to be house furnishings?—A. No, office furnishings I would consider it.

Q. Exhibit 1 as office furnishings? —A. Office furniture.

Q. Office furniture? Excuse me, I want to be sure. And Exhibit 2 do you also consider that to be office furniture?—A. Yes, in the same category.

Q. Have you ever come across the word "furnishings" in the course of your business experience?—A. Yes.

Q. What would you consider to be office furnishings?—A. Ash trays, lighters, desk pens, pen sets; anything standing on the desk.

Q. Anything standing on the desks. Well, Exhibit 2 stands on the desk, does it not?—A. It does.

▮▮▮ The question before the court is whether wastebaskets and letter trays are "furniture" within the meaning of paragraph 412, as modified, supra. No commercial designation having been claimed, the tariff sense of the term is its common meaning. Armand Schwab & Co., Inc. v. United States, 32 CCPA 129, 132, C.A.D. 296. Common meaning is a question of law to be determined by the court. In making its determination, it may rely upon its own understanding and may consult works of standard lexicographers and other authorities and may receive the testimony of witnesses. Such testimony is advisory only and has no binding effect on the court. United States v. John B. Stetson Co., 21 CCPA 3, 9, T.D. 46319; United States v. O. Brager-Larsen, 36 CCPA 1, 3, C.A.D. 388. Where a general term such as "furniture" is involved, the common meaning is construed by the courts on a case by case basis, setting the limits of the statutory language by a process of inclusion and exclusion. Marshall Field & Co. v. United States, 45 CCPA 72, C.A.D. 676.

In the instant case, the testimony of the witness is not very helpful in advising the court of the meaning of the term "furniture" or in establishing that the merchandise involved herein is so classifiable. The primary duties of the witness were as manager of the plant and his selling experience was somewhat limited. While he contended that the letter trays were furniture, he said that he did not consider anything which stood on a desk to be furniture. When asked whether the articles involved herein were advertised as office furniture, he could not remember, but thought the wastebaskets were advertised merely as wastebaskets. In billing, his firm uses the names of the articles rather than the term "furniture."

Defendant has called to our attention a number of dictionary definitions of the word "furniture," to the effect that the term denotes the main movables of a house or place of business, required for general convenience, such as chairs, tables, desks, beds, cabinets, sofas, stoves, etc. Funk & Wagnalls New "Standard" Dictionary of the English Language (1956 ed.), Webster's New International Dictionary of the English Language, Second Edition, Unabridged (1958), The Winston Dictionary, Encyclopedic Edition (1957), The New Century Dictionary of the English Language, volume I (1946), Webster's New World Dictionary of the American Language (1955), Collier's Encyclopedia, volume 8 (1953 ed.).

The Tariff Information Surveys on the Articles in paragraphs 175 and 176 of the Tariff Act of 1913, page 37, 39, described furniture as "a considerable variety of movable household articles, such as chairs, tables, desks, lounges, sofas, bookcases, bureaus, chiffoniers, bedsteads, and the like" and noted that it was bulky. The Summary of Tariff Information, 1929, page 955, described house and cabinet furniture as including chairs, tables, desks, lounges, sofas, bookcases, bureaus, chiffoniers, beds, washstands, etc. It noted (p. 957) that imports from France, Italy, and the United Kingdom were largely carved or upholstered pieces; that Poland and Belgium shipped willow chairs, and that bentwood furniture, chiefly chairs, were supplied by Czechoslovakia, Poland, and Danzig.

The question of whether or not a particular article comes within the term "furniture" has been before this court and the appellate courts many times. See Furniture Import Corp. v. United States, 56 Cust.Ct. 125, C.D. 2619, for a list of such cases and the items involved.

In a leading case on this subject, Morimura Bros. v. United States, 2 Ct.Cust. Appls. 181, T.D. 31941, it was held that screens with panels of cotton, ornamented with embroidery, designs or appliqued figures, were not dutiable as furniture under the Tariff Act of 1897. In

the course of the opinion, the court stated (pp. 182–183):

> Giving to words their strict meaning rather than the signification resulting from a careless use of them, screens such as those imported are not house furniture at all, but house furnishings —that is to say, articles designed more for the ornamentation of the house than for the personal use or convenience and comfort of its occupants. The term "furniture" as ordinarily used may mean that with which anything is furnished, supplied, or equipped. House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped. House furniture, in these modern times, has come to denote those articles of household utility which were formerly made of wood and which are designed for the personal use, convenience, and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and tidies, pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings.

In a more recent case, Fabry Associates, Inc. v. United States, 45 Cust.Ct. 88, C.D. 2203, in holding that shelves in knocked-down condition to be fastened to walls were furniture, the court stated (p. 90):

> It has been held that the term "furniture" is one of broad signification (Necchi Sewing Machine Sales Corp. and Barian Shipping Co., Inc. v. United States, 30 Cust.Ct. 1, C.D. 1489), and one which is not limited to what might be termed the usual or conventional kind of furniture (Decorative Imports v. United States, 43 Cust.Ct.

31, C.D. 2099). It embraces articles of utility which are designed for the use, convenience, and comfort of the dweller in a house (Morimura Bros. v. United States, 2 Ct.Cust.Appls. 181, T.D. 31941) or the occupier of a place of business. "Furnishings," on the other hand, are subsidiary adjuncts and appendages designed for the ornamentation of a dwelling or business place, or which are of comparatively minor importance so far as use, comfort, and convenience are concerned (Morimura Bros. v. United States, supra). We are satisfied that the articles at bar fall into the category of "furniture," rather than that of "furnishings."

In the most recent case before our court of appeals, United States v. Shelford, Inc., Wheeler and Miller, 53 CCPA 53, C.A.D. 876, it was held that automobile backrests were not furniture, the court stating (p. 56):

> While we agree that the backrests are more sturdy than tidies and pillow shams, we don't believe this difference distinguishes furniture from furnishings. The determinative factor, we think, is the use to which an item is put—the question being whether the goods function as furniture. United States v. Quon Quon Co., 46 CCPA 70, C.A.D. 699. Here we think the goods function as an accessory to furniture rather than furniture itself. While the backrests support the back, they do so in only a limited sense as a secondary rather than a primary support. The backrests, unlike the peel beach chairs involved in the litigation below, are not self-supporting but must be used much as a pillow or cushion is used. As such, we think that in ordinary terminology the backrests are more properly denominated furnishings rather than furniture.

In Furniture Import Corp. v. United States, supra, the court made a distinction between articles of utility and those used primarily for ornamentation. It held that plaques and sconces used only

for decorative purposes were not classifiable as furniture. It stated (p. 133):

> Doubtless our predecessors, like ourselves, were aware of the artistic skill often lavished on furniture, and the beauty achieved. But they believed, as we do, that for tariff purposes "furniture" must do more than please the eye and occupy space. The portion we quote from the opinion in the *Morimura* case, supra, is a clear indication that the court of appeals, at that time, and under the statute before it, considered that "house furniture" meant articles having utility for the use, convenience, and comfort of the house dweller and not subsidiary articles designed for ornamentation alone. None of the cases since that time have held that articles which are manifestly ornamental only, as distinguished from ones useful to hold ornaments, are furniture.

In that case, the court also noted that the term "furniture" in paragraph 412 was further restricted by the special provision (not under "furniture") in the modifications of paragraph 412 in the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, supra, and the Sixth Protocol of Supplementary Concessions to said agreement, supra, which cover "trays, bowls, platters, lamp bases, book ends, and similar household wares" of mahogany. It concluded that not all household articles were "furniture" for tariff purposes.

■ In view of the definitions and the cases cited, it is evident that not all articles, used to equip households and offices, which are utilitarian and not merely ornamental, fall within the "furniture" as commonly understood and as used in tariff statutes. Articles of comparatively minor importance so far as personal use, convenience, and comfort are concerned, or which function as accessories, or subsidiary adjuncts to furniture, are not deemed to be furniture.

■ Under these principles neither of the articles involved herein can be considered furniture. In a recent case, Royal Cathay Trading Co. and W. J. Byrnes & Co. et al. v. United States, 56 Cust.Ct. 371, C.D. 2662, among the items before the court were wastebaskets composed of rattancore. They were classified under paragraph 411 of the Tariff Act of 1930, as modified, as baskets, wholly or in chief value of wood, and were claimed to be dutiable under paragraph 412, as furniture. In the course of the opinion, the court discussed the legislative history of paragraph 411 and concluded that Congress contemplated that wastebaskets composed of rattancore would be classified as baskets under paragraph 411 and not as furniture.

Although the wastebaskets involved herein are composed of walnut rather than rattancore, they are wastebaskets having the same use and of a similar type to those involved in the *Royal Cathay* case. For the reasons stated therein, and on the further ground that these articles are of comparatively minor importance so far as use, comfort, and convenience are concerned, and function as accessories or subsidiary adjuncts to furniture, such as desks and tables, we hold that they are not furniture.

The letter trays are clearly accessories which are used in offices upon desks or tables. The witness himself did not consider articles used upon a desk to be furniture. The letter trays herein are no more furniture than are other articles used upon a desk, such as inkstands, penholders, calendars, or desk pads.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.

WATSON, J., concurs.