**HURRICANE IMPORT CO. and Wheeler & Miller**

v.

**UNITED STATES.**

C.D. 3728; Protest 63/14423–99358.

United States Customs Court
First Division.
March 4, 1969.

Glad & Tuttle, Los Angeles, Cal. (George R. Tuttle, Los Angeles, Cal., of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Arthur H. Steinberg, New York City, trial attorney), for defendant.

Before WATSON, MALETZ, and NEWMAN, Judges.

NEWMAN, Judge:

The imported merchandise, consisting of wooden gun racks with or without locking bars, was classified at the port of entry as manufactures in chief value of wood, not specially provided for, and assessed with duty at the rate of 16⅔ per centum ad valorem, pursuant to paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade. Plaintiffs contend that the gun racks should be classified as furniture, other than chairs, dutiable at the rate of 10½ per centum

ad valorem under said paragraph 412, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade.

## STATUTES INVOLVED

*Classified under:*

Paragraph 412 of the Tariff Act of 1930, as modified by T. D.'s 52373 and 52476:

Manufactures of wood or bark, of which wood or bark is the component material of chief value, not specially provided for:

\*   \*   \*   \*   \*   \*   \*   \*

Other (except \* \* \*) ....................16⅔% ad val.

*Claimed under:*

Paragraph 412 of the Tariff Act of 1930, as modified by T. D. 54108:

Furniture, wholly or partly finished, and parts thereof wholly or in chief value of wood, and not specially provided for:

\*   \*   \*   \*   \*   \*   \*   \*

Other furniture ...........................10½%  ad  val.

---

## THE ISSUE

The sole issue presented is whether the gun racks are "furniture" within the common meaning of that term in paragraph 412 of the Tariff Act of 1930, as modified.

## THE RECORD

Plaintiffs called as their sole witness, Fred Schlesinger,[1] and buttressed his testimony by the introduction of five exhibits. The main thrust of plaintiffs' proof is that these importations are similar in all material respects to the gun racks involved in their successful protests, as adjudicated by this court in Hurricane Import Co. et al. v. United States, 55 Cust.Ct. 210, C.D. 2577, excepting for the absence of a drawer for storage at the base of the gun racks under review (R. 6, 8–12).

The Government rested its case, without offering proof by witness or documentation. It contended: the common meaning of a general term, as "furni-

ture", is to be construed on a case by case basis, setting the limits of the statutory language by a process of inclusion and exclusion; that *Hurricane Import* is distinguishable, inasmuch as the gun racks there considered were dissimilar by design or craftsmanship (particularly since they contained drawers), and were designed for different use. Continuing, the Government argued that, in light of the fact that these gun racks were marketed mainly through sporting goods channels, these gun racks should be considered as adjuncts or accessories to the sportsman or hobbyist, and hence should be regarded as sporting goods accessories, not furniture.

We find no basis—or authority—for the Government's position. Indeed, no supporting decision has been submitted by the Government; and we are clear that the protest of the plaintiff should be sustained.

Mr. Schlesinger, who likewise had testified in the prior case, impressively

---

1. Mr. Schlesinger is plaintiffs' vice-president, whose duties comprised overseas purchasing and direct supervision of the sale of this merchandise.

detailed the identical or close similarity of relevant criteria of the gun racks in the prior case as relating to these importations. Additionally, the record demonstrates that the respective gun racks were designed "to blend in with * * * [the] furniture" "for a specific purpose; to be displayed * * * in den rooms, or trophy rooms, game rooms" ; and that these gun racks were specifically designed to cater to exhibitionistic sportsmen, as well as to possess utilitarian purposes. Thus, among other things, the respective importations here as compared to those in *Hurricane Import* are identical or similar: as to finish; as to construction, workmanship, method of attachment to the wall (except that there is no provision for holding ammunition), and yet are sold to the same class of trade in compliance with the same advertising; as to scalloped designs to blend with the decor of most room furniture; as to utilization of felting to prevent scraping and to provide protection; as to various locking devices for safety; and that they were manufactured primarily by furniture houses in Japan.

We are tempted to quote in *extenso* from the decision in *Hurricane Import;* but we are content to distill, simply, the Court's statement that (like these importations) those gun racks were adjudged "in part honorific, in part aesthetic, in part utilitarian".

Moreover, this Court in *Hurricane Import* cited with approval the decision in Fabry Associates, Inc. v. United States, 45 Cust.Ct. 88, C.D. 2203, to the effect that shelves for books, decorative items, radios, plants, etc., some with drawers and some without which were attached to the wall, were furniture under paragraph 412 of the Tariff Act of 1930 as modified. There, the Court said (page 90):

It has been held that the term "furniture" is one of broad signification (Necchi Sewing Machine Sales Corp. and Barian Shipping Co., Inc. v. United States, 30 Cust.Ct. 1, C.D. 1489), and one which is not limited to what might be termed the usual or conventional kind of furniture (Decorative Imports v. United States, 43 Cust.Ct. 31, C.D. 2099). It embraces articles of utility which are designed for the use, convenience, and comfort of the dweller in a house (Morimura Bros. v. United States, 2 Ct.Cust.Appls. 181, T.D. 31941) * * *.

We direct attention to the recent decision of Furniture Import Corp. v. United States, 56 Cust.Ct. 125, C.D. 2619, where an open wall cabinet with one shelf, and a decorative wall bracket having a flat shelf with certain sconces designed for hanging on a wall, were among a number of items contested. These items, used to store knickknacks and other decorative items, were of an ornamental and some utilitarian nature. The Court determined that these articles (other than the sconces) were classifiable as "furniture" within the intendment of paragraph 412 of the Tariff Act of 1930, not merely ornaments, and "[fell] within the purview of the *Fabry case, supra*". Significantly the articles considered in *Furniture Import*, as well as the articles in the present case, consisted of shelves or racks without drawers across the bottom, designed to be hung on a wall, and not permanently fixed.

■ Plainly then, as in *Hurricane Import,* these gun racks served a utilitarian as well as a decorative purpose in storing and displaying a sportsman's or collector's guns. These importations, consequently, fall squarely within the common understanding of the term "furniture" under paragraph 412, *supra,* as previously enunciated by this court; and the presence or absence of drawers on the racks is immaterial to this determination. While it is true that the absence of a drawer does make these racks "different" from the racks in *Hurricane Import,* it is not a difference of such substance as to remove these importations from the class of items known as furniture.

■ Finally, it is not necessarily appearance alone, or permanent fixation, which determines whether an article is

furniture or serves to alter its character. (See Fabry v. United States, *supra*, citing St. Francis Xavier Church v. United States, 27 Cust.Ct. 215, C.D. 1373).

Accordingly, we hold that these gun racks are furniture within the purview of paragraph 412. They are more specifically provided for under the provision for furniture, than under the provision for manufactures in chief value of wood, pursuant to which they were classified.

The protest to that effect is sustained.

