**SPROUSE REITZ & CO. and Frank P. Dow Co., Inc.**

**v.**

**UNITED STATES.**

C.D. 4276; Protest 69/33080–10074 against the decision of the district director of customs at the port of Portland, Or.

United States Customs Court, First Division.
Decided Sept. 30, 1971.

**210**

———◆———

Glad & Tuttle, San Francisco, Cal. (George R. Tuttle, and Hudson F. Edwards, San Francisco, Cal., of counsel), for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen. (John A. Winters and Robert Blanc, New York City, trial attys.), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain articles imported from Japan in 1968. The articles are of wood and are described as spice racks designed to be hung on the wall in the home, presumably in the kitchen, to hold bottles of spices. The spice racks in question are all similar except that one type, in addition to the shelves intended to hold glass bottles of spices, also contains drawers within which can be stored tea bags, condiments, or other items.

The spice racks were assessed with duty at the rate of 15 per centum ad valorem as other household utensils, not specially provided for, of wood, under item 206.97 of the Tariff Schedules of the United States, as modified by T.D. 68–9.

Plaintiffs have protested the classification, and claim that the spice racks fall within the common meaning of the term "furniture", and therefore are more specifically provided for under the provision for other furniture, not specially provided for, of wood, under item 727.35 of the Tariff Schedules of the United States, as modified by T.D. 68–9. Under the claimed provision they would be dutiable at the rate of only 9 per centum ad valorem.

The pertinent or competing provisions of the Tariff Schedules of the United States may conveniently be set forth as follows:

Classified under:
  Schedule 2—Part 1
    "Household utensiles and parts thereof, all the foregoing not specially provided for, of wood:
         *    *    *    *    *    *
206.97   Other .................. 15% ad val."

Claimed under:
  Schedule 7—Part 4
    "PART 4.—FURNITURE; PILLOWS, CUSHIONS, AND MATTRESSES; NONTEXTILE FLOOR COVERINGS
      Subpart A.—Furniture, Pillows, Cushions, and Mattresses
  Subpart A headnotes:
    1. For the purposes of this subpart, the term 'furniture' includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture, even though designed to be fixed to the wall or to stand one on the other; * * *."
    "Furniture, and parts thereof, not specially provided for:
         *    *    *    *    *    *
      Of wood:
         *    *    *    *    *    *
727.35   Furniture other than chairs ... 9% ad val."

In addition to certain exhibits, which include representative samples of the

spice racks in issue, the record in this case consists of the testimony of two witnesses. The witness who testified on behalf of the plaintiffs is a buyer for the Sprouse Reitz Company who stated that his employer is in the "variety store business". He was familiar with the spice racks in question and had seen them used in homes. They are attached to the wall with screws and are used to hold spices. Since the racks are Early American style they are intended to blend with Early American furnishings. In cross-examination the witness characterized the spice racks as "furnishings for the house", and as "inexpensive" since they sold for "$1.99 and $2.99." He also stated that the racks were "more decorative or ornamental", that is, their "importance" in the kitchen was first, decorative and second, utilitarian. He agreed that the merchandise could be described as "subsidiary adjuncts and appendages of the house designed for its ornamentation or which are comparatively minor in importance so far as personal use, convenience and comfort are concerned."

To the question whether he considered the spice racks to be furniture, the witness replied, "I would think so, yes", and explained the reason for his conclusion as follows: "It's a furnishing. It is something that is affixed to the wall." Plaintiffs' witness finally testified that he would describe the spice racks as furniture, furnishings or accessories to furniture.

The witness who testified on behalf of the defendant stated that he sold the spice racks in his furniture stores, and that they were offered to the public as accessories to furniture. According to his observation his competitors offered them to the public as accessories, and not as furniture. He stated:

"If you call accessories furniture, such as wall plaques, mirrors, and so forth, then [the merchandise at bar] would have to be considered furniture. But we consider them as accessories."

Based upon its assertion that the spice racks at bar are "kitchen furniture and manifestly both utilitarian and decorative", plaintiffs contend that "[t]he record, the exhibits, and authorities cited establish conclusively that the spice racks at issue herein fall within the common meaning of the term 'furniture' and are properly classifiable under the Tariff provisions specifically provided therefor." (Plaintiffs' brief, pages 9–10)

Simply stated, the issue presented is whether plaintiffs have successfully proven that the spice racks constitute "furniture" in the tariff sense of the word. It is to be noted however, that, whereas plaintiffs rely primarily upon certain judicial decisions, the defendant places greater reliance upon the pertinent headnote in the tariff schedules that enumerates certain movable articles of utility that are included in the term "furniture". Plaintiffs, in their brief, do not discuss the pertinence or effect of the headnote upon the prior decisions, but urge that the merchandise falls within the "common meaning" of the term "furniture". The defendant, however, dwells upon the applicability of the headnote, and submits that it constitutes a statutory definition that "was drawn to reflect what is or is not to be considered as furniture." Hence, the defendant urges the conclusion that "[t]he flimsy articles in issue fall outside that definition and are more appropriately classified as household utensils." (Defendant's brief, page 11)

In support of its position, that the cited headnote sets forth the controlling definition of "furniture", the defendant quotes from The Tariff Classification Study, schedule 7, page 242 (1960) that "[t]he concept of furniture embraced in this subpart is stated as a definition in Headnote 1." It also calls the attention of the court to the case of Shelford, Inc., et al. v. United States, 54 Cust.Ct. 130, C.D. 2520 (1965) (reversed in United States v. Shelford, Inc., et al., 53 CCPA 53, C.A.D. 876 (1966), and discussed in Vilem B. Haan et al. v. United States, 67

Cust.Ct. ——, C.D. 4260 (1971)), wherein the headnote was referred to as a definition.

No case has been found which has squarely passed upon the question whether the headnote which pertains to the term "furniture" constitutes a statutory definition. The question was inferentially presented in the case of The American Import Co. et al. v. United States, 62 Cust.Ct. 486, 490 C.D. 3807 (1969), which held that gunracks were "properly dutiable as furniture within the purview of item 727.35 of the Tariff Schedules of the United States." In The American Import Co. case, the defendant urged that the gunracks were not furniture "either within the common meaning of that term or within the purview of the headnote", but rather, were "sporting goods accessories". Id. at 489.

The court in The American Import Co. case, stated the question as follows:

"Hence, there is no dispute that the merchandise is dutiable as claimed by plaintiffs if it is furniture, either within the common meaning of the term (as enunciated in past decisions of this court) or within the headnote definition." Ibid.

In the very next sentence, the court added:

"It is clear that the latter [the headnote definition], by the use of the word 'includes' followed by several enumerations, was merely intended by Congress to extend the meaning to be ascribed to the term 'furniture,' and not to restrict its meaning as judicially determined." Ibid.

Since the gunracks in The American Import Co. case were, in all material respects, the same as those in two prior cases, the court noted that:

"The question of whether wooden gunracks are furniture within the common meaning of the term has previously been resolved in two cases: Hurricane Import Co. et al. v. United States, 55 Cust.Ct. 210, C.D. 2577 (1965); and Hurricane Import Co. et al. v. United States, [296 F.Supp. 343]

62 Cust.Ct. 194, C.D. 3728 (1969). In both decisions the gunracks were held properly dutiable as furniture, rather than as manufactures of wood under paragraph 412 of the Tariff Act of 1930, as modified." Ibid.

The 1969 Hurricane Import Co. case cited held that the absence of a drawer from the gunracks was not a significant factor in determining whether they were classifiable as furniture, and held that they served "a utilitarian as well as a decorative purpose". Following the holding of the two prior cases, that held that the gunracks were furniture, the court in The American Import Co. case concluded:

"We are clear that the gunracks in this case, as those in the prior Hurricane cases, served a utilitarian as well as decorative purpose in storing and displaying a sportsman's or collector's guns. We deem our prior decisions stare decisis of the issue presented herein. Following our holdings in the two Hurricane cases, supra, we conclude that the imported articles are within the common meaning of the term 'furniture,' and the presence or absence of drawers is of no consequence in such classification." Id. at 490.

Since The American Import Co. case was decided on the basis of the common meaning of the term furniture, it is clear that the statement contained therein, that the headnote definition "was merely intended by Congress to extend the meaning to be ascribed to the term 'furniture'", was obiter dictum. The question whether the headnote definition was intended by Congress to restrict the meaning of the term "furniture", as previously judicially determined, was therefore not answered authoritatively.

The defendant herein submits that headnote 1 is a statutory definition, and that merchandise not included or described in that definition can not be classified as furniture in subpart A, part 4, schedule 7 of the Tariff Schedules of the United States. Since the court has de-

termined that the controverted spice racks fall neither within the headnote definition nor the common meaning of the term "furniture", this question need not be decided in the case at bar.

That the spice racks at bar do not come within the headnote definition of the term "furniture" can not be seriously disputed. Indeed, plaintiffs do not seem to contend that they do. In any event, bearing in mind the presumption of correctness that prevails in a customs classification case, a reading of the record will reveal that it is totally insufficient to show that the spice racks come within the headnote definition of headnote 1, subpart A, part 4 of schedule 7 of the Tariff Schedules of the United States. They are obviously not movable articles of utility designed to be placed on the floor or ground, and it would be far-fetched to say that they are kitchen cabinets and similar cupboards. Clearly, no one could contend that they are seats or beds. Likewise, no one could seriously contend that they are sectional bookcases or similar sectional furniture, items which are deemed to be furniture even though designed to be attached to the wall.

In view of the similarity of provisions, a reference to the "Brussels Nomenclature", on the subject of furniture, is warranted and lends support to defendant's contention that the spice racks are not included in the headnote definition. See Schwarz, dba Ski Imports v. United States, 417 F.2d 1391, 57 CCPA 19, C.A.D. 971 (1969); F. L. Smidth & Company v. United States, 409 F.2d 1369, 56 CCPA 77, C.A.D. 958 (1969).

Chapter 94.00 of the Explanatory Notes to the Brussels Nomenclature 1955, Volume 3, pages 1145–1146 (1964), contains the following pertinent language:

"For the purposes of this Chapter, the term *'furniture'* is to be taken to mean:

(A) Any 'movable' articles (*not* included under other more specific headings of the Nomenclature), which have the essential characteristic that they are constructed for placing on the floor or ground, and which are used, mainly with a utilitarian purpose, to equip private dwellings, hotels, theatres, cinemas, offices, churches, schools, cafés, restaurants, laboratories, hospitals, dentists' surgeries, etc., or ships, aircraft, railway coaches, motor vehicles, caravan-trailers or similar means of transport. (It should be noted that, for the purposes of this Chapter, articles are considered to be 'movable' furniture even if they are designed for bolting, etc., to the floor, e. g., chairs for use on ships.) Similar articles (seats, chairs, etc.) for use in gardens, squares, promenades, etc., are also included in this category.

(B) The following even if they are designed to be fixed to the wall or to stand one on the other:

(i) Kitchen cabinets and similar cupboards.

(ii) Folding seats and beds.

(iii) Unit bookcases and similar unit furniture.

*Except* for the goods referred to in sub-paragraph (B) above, the term 'furniture' is to be taken *not to apply* to articles used as furniture but designed for placing on other furniture or shelves or for hanging on walls. It therefore follows that the present Chapter *does not cover* other wall fixtures such as coat and hat racks, wall racks, key-boards, clothes-brush hangers and newspaper racks, nor furnishings such as radiator screens. Similarly, the Chapter *excludes* the following types of goods *not* designed for placing on the floor:—small articles of cabinetwork and small furnishing goods of work (*heading 44.27*), and office equipment of base metal (e. g., sorting boxes, paper trays) (*heading 83.04*)." (Emphasis in original.)

Equally pertinent to the present inquiry is Chapter 44.24 which covers household utensils of wood. It provides:

"44.4 — HOUSEHOLD UTENSILS OF WOOD.

This heading covers *only* those articles of wood, turned or not, which are essentially of the nature of tableware or kitchen or household implements; *it does not*, however, *cover* goods which are primarily ornamental in character, nor furniture. The heading includes: spoons, forks, salad-servers; platters and serving-dishes; jars, cups and saucers; common spice-boxes and other kitchen containers; crumb-scoops, *not* incorporating brushes; rolling pins; pastry moulds; washing-boards; bread boards, chopping boards; butter patters; plate racks; clothes-pegs." (Emphasis in original.)

After setting forth the quoted language of Chapter 44.24, the defendant, in its brief, states that the spice racks "fall within the realm of 'common spice-boxes' and other kitchen containers and are clearly outside the statutory definition of 'furniture'." (Defendant's brief, page 7)

Apart from the headnote definition urged by the defendant, an oft-quoted definition of furniture is found in the Court of Customs Appeals decision of Morimura Bros. v. United States, 2 Ct. Cust.App. 181, 182, T.D. 31941 (1911), wherein the court stated:

"The term 'furniture' as ordinarily used may mean that with which anything is furnished, supplied, or equipped. House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped. *House furniture*, in these modern times, has come to denote those *articles of household utility* which were formerly made of wood and which are *designed for the personal use, convenience and comfort of the dweller.* House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned." (Emphasis added.)

A number of cases can be found which have had occasion to discuss what has constituted furniture under the various tariff acts. For example, it has been said that the term "furniture" is one of "broad signification" (Necchi Sewing Machine Sales Corp. et al. v. United States, 30 Cust.Ct. 1, 3, C.D. 1489 (1952)). It has also been said that it is not limited to "furniture in the formal sense, but embrace[s] the informal and even unconventional types which may be used or in vogue from time to time * * *" (Decorative Imports v. United States, 43 Cust.Ct. 31, 34, C.D. 2099 (1959)).

Many of the judicial decisions are collected and discussed in the case of Furniture Import Corp. v. United States, 56 Cust.Ct. 125, C.D. 2619 (1966). Judge Nichols, who wrote the opinion of the court in the *Furniture Import Corp.* case, enumerated a quantity of cases wherein certain articles were held by this court to be "furniture" under the tariff acts. In the *Furniture Import Corp.* case, wall cabinets of various sizes were held to be "furniture" within the pertinent provision of the Tariff Act of 1930, as modified. The cases that have held gunracks to be furniture have already been mentioned. The American Import Co. et al. v. United States, 62 Cust.Ct. 486, C.D. 3807 (1969); Hurricane Import Co. et al. v. United States, 55 Cust.Ct. 210, C.D. 2577 (1965); Hurricane Import Co. et al. v. United States, 62 Cust.Ct. 194, C.D. 3728, 296 F.Supp. 343 (1969). In Necchi Sewing Machine Sales Corp. et al. v. United States, 30 Cust.Ct. 1, C.D. 1489 (1952), sewing-machine cabinets were held to be "furniture" under the Tariff Act of 1930, as modified. In Decorative Imports v. United States, 43 Cust.Ct. 31, C.D. 2099 (1959), certain seats with back rests were held properly classifiable as "fur-

niture" under that same act. In Fabry Associates, Inc. v. United States, 45 Cust. Ct. 88, C.D. 2203 (1960), unassembled sets of shelves to be fastened to walls and, when assembled, to be used as shelves for books and other articles, were held properly dutiable as "furniture" under the Tariff Act of 1930, as modified.

After referring to some of the decided cases, the plaintiffs assert that it is "manifest that there is no substantial distinction between spice racks, wall cabinets, shelves, or gunracks." Plaintiffs, however, fail to note that in each of the cases where the merchandise was held to be furniture, the court, either expressly or inferentially, found that it consisted of *articles of utility designed for the use, convenience and comfort of the dweller in a house.* The language, which embodied the finding of utility, invariably followed closely that of the *Morimura Bros.* case decided by the Court of Customs Appeals. For example, the sewing-machine cabinets in the *Necchi Sewing Machine Sales Corp.* case were found to be "articles of convenience". In the gunrack cases, the court emphasized that they served "a utilitarian as well as a decorative purpose".

That furniture must serve a utilitarian purpose is well illustrated by the *Furniture Import Corp.* case which held wall cabinets to be furniture. The merchandise in that case consisted of a variety of articles. Two items described as wall cabinets were conceded by the defendant to be furniture. Two other items, also described as wall cabinets, were not conceded to be furniture because they were of a smaller size and were not substantial enough to support objects of weight, such as books. The court held that all of the wall cabinets, regardless of size, were classifiable as furniture. All of the other articles however, which were solely or purely of an ornamental nature, were held not to be furniture, and as to those articles the protests were overruled. For example, plaques and "sconces", described as articles "purely ornamental", were held not to be "furniture" within the meaning

of that term under the Tariff Act of 1930, as modified.

That utility was the crucial feature of "furniture" is indicated by the court's discussion pertaining to the plaques and "sconces". Notwithstanding that they were of substantial size, made by furniture manufacturers and sold in furniture stores, the plaques and "sconces" did not constitute furniture because they were "purely ornamental". A different finding would have been made if the "sconces" had been electrified or were used with candles to give light.

In the *Furniture Import Corp.* case, Judge Nichols quoted from the *Morimura Bros.* case, and set forth his understanding that "house furniture" in the *Morimura Bros.* case "meant articles having utility for the use, convenience and comfort of the house dweller and not subsidiary articles designed for ornamentation alone." 56 Cust.Ct. at 133. He added that:

> "None of the cases since that time have held that articles which are manifestly ornamental only, as distinguished from ones useful to hold ornaments, are furniture." *Ibid.*

The court therefore, in the *Furniture Import Corp.* case, made a clear distinction between articles of utility, and those used primarily for ornamentation.

This distinction or dichotomy is perhaps best illustrated in the case of Warren Atlantic, Inc. v. United States, 60 Cust.Ct. 36, C.D. 3250, 278 F.Supp. 302 (1968), where wastebaskets and letter trays were held properly dutiable as manufactures of wood and not as "furniture". The *Warren Atlantic* case, like the *Furniture Import* case, also was decided under the Tariff Act of 1930, as modified, and, therefore, not pursuant to the tariff schedules and the pertinent headnote discussed previously. Citing the case of Marshall Field & Co. v. United States, 45 CCPA 72, C.A.D. 676 (1958), the court stated that "[w]here a general term such as 'furniture' is involved, the common meaning is construed by the courts on a case by case basis,

setting the limits of the statutory language by a process of inclusion and exclusion." 60 Cust.Ct. at 39.

After referring to certain judicial decisions, dictionary definitions of the word "furniture", and pertinent Tariff Information Surveys, the court concluded as follows:

"In view of the definitions and the cases cited, it is evident that not all articles, used to equip households and offices, which are utilitarian and not merely ornamental, fall within the term 'furniture' as commonly understood and as used in tariff statutes. Articles of comparatively minor importance so far as personal use, convenience and comfort are concerned or which function as accessories, or subsidiary adjuncts to furniture, are not deemed to be furniture." 60 Cust. Ct. at 41.

In the case at bar the testimony of both witnesses places the spice racks in issue squarely within the language quoted from the *Warren Atlantic, Inc.* case. Indeed, it was plaintiffs' witness who, in cross-examination, testified that he would consider the merchandise at bar to be "subsidiary adjuncts and appendages of the house designed for its ornamentation or which are comparatively minor in importance so far as personal use, convenience and comfort are concerned." This answer supplements his testimony that he considered the merchandise to be "inexpensive", and that it is "more decorative or ornamental".

Based upon the record presented, therefore, it is the determination of the court that the merchandise at bar is neither included in the pertinent headnote definition nor within the common meaning of the term "furniture" as judicially determined by prior case law.

After an examination of the illustrative exhibits and the entire record, the court holds that plaintiffs have not met their dual burden of proof that the spice racks in issue were erroneously classified and that the claimed classification is correct. Consequently, the presumption of correctness that attaches to the classification of the customs officials has not been rebutted, and the protest is overruled.

Judgment will issue accordingly.