Defendant's motion for summary judgment is denied.

Judgment will be entered accordingly.

(C.D. 4328)

AMTHOR IMPORTS, INC. THORNLEY & PITT } *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 25, 1972)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*L. Patrick Gray, III*, Assistant Attorney General (*Gilbert Lee Sandler* and *Peter Jay Baskin*, trial attorneys), for the defendant.

Before WATSON and MALETZ, Judges; and ROSENSTEIN, Senior Judge

ROSENSTEIN, Judge: The merchandise involved herein, described as Shesham wood carved bookshelves, Shesham wood carved Koran racks, and Shesham wood hatracks, 10 pegs, exported from India and entered at the port of San Francisco during 1966 and 1967, was assessed with duty at the rate of 16⅔ per centum ad valorem under TSUS item 206.97 as other household utensils not specially provided for, of wood. Plaintiffs claim that the importations are furniture, within the common meaning of the term, and therefore properly dutiable at 10½ per centum ad valorem as other furniture not specially provided for, of wood, under TSUS item 727.35.

The relevant provisions of the tariff schedules are as follows:

Schedule 2, Part 1, Subpart E:
      Household utensils and parts thereof,
        all the foregoing not specially pro-
        vided for, of wood:

     \*      \*      \*      \*      \*      \*      \*

206.97        Other_____      16⅔% ad val.

Schedule 7, Part 4, Subpart A:

    Subpart A headnotes:

    1. For the purposes of this subpart, the term "furniture" includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture, even though designed to be fixed to the wall or to stand one on the other; but the term does not include—

\*      \*      \*      \*      \*      \*      \*

    Furniture, and parts thereof, not specifically provided for:

\*      \*      \*      \*      \*      \*      \*

Of wood:

\*      \*      \*      \*      \*      \*      \*

Other:

\*      \*      \*      \*      \*      \*      \*

727.35                Furniture other than chairs_____ 10.5% ad val.

At the trial exhibits 1, 2, and 3 were received in evidence without objection as illustrative of the bookshelves and Koran racks identified on the invoice in entry 55768, dated April 28, 1967, and of the 10 peg hatracks on the invoice in entry 60552 of June 14, 1966.[1]

Exhibit 1 consists of a flat shelf measuring approximately 6 x 16 inches. It has a sliding base that extends the shelf another 10 inches in length and carved folding elephant shaped "bookends". Exhibit 2 is an elaborately carved folding rack which opens up into an X configuration standing about 7 inches high. Exhibit 3 is a folding rack composed of eight strips of wood which opens out into a framework of three squares or diamonds. The article has 10 pegs about 3 inches long, each of which is affixed to the rack at the points where the strips are fastened.

Plaintiffs called one witness, as did defendant. Plaintiffs' witness, the import manager for Amthor Imports and Cost Plus Imports, who testified that he supervises the merchandise imported by these companies and has observed the sales at their main retail store, stated that exhibit 1 is designed and used to hold books and that he uses one of these articles for that purpose on a desk in his office.

Exhibit 2, the witness stated, was designed to hold the Koran and is used to hold a book. He opined that it is similar to a table because it has four legs forming the base, although it does not have a flat top and does not, by virtue of its size, stand on the floor. The witness uses a Koran stand to hold a dictionary. The article has been sold in both the furniture and wood sections of his store.

Exhibit 3, which is affixed permanently to the wall with screws or nails, is used to hang sweaters, coats and hats. All three exhibits, according to the witness, perform utilitarian functions.

Defendant's witness, who owns a gift shop in San Francisco, testified that he sells articles such as exhibits 1 and 2 as "bookends" (R. 17).

---

[1] Plaintiffs did not refer to the items on entry 29604 of October 27, 1966 herein. Although defendant did not question the identity of the merchandise at the trial, it now complains (brief, 1) of an inability "to satisfactorily relate these exhibits to the various invoice descriptions on the commercial invoices in entries 60552, 55768, and 29604 (which were not introduced into evidence)." The time for raising this question is long past. On the uncontroverted testimony of record the exhibits, which were "offered as illustrative of the merchandise" (R. 4), shall be treated accordingly.

Plaintiffs' claim is grounded solely on the argument that the subject articles "fall within the common meaning of the term 'furniture' in that they are articles of utility designed for use in the home for comfort and convenience." Plaintiffs do not rely on or even refer to headnote 1, *supra*, of Schedule 7, Part 4, Subpart A, which enumerates certain movable articles of utility that are included in the term "furniture". Defendant states, but does not press, its position that the headnote 1 definition is intended to be controlling of what may be classified as "furniture" for purposes of Schedule 7, Part 4, Subpart A of TSUS; rather, it urges that the instant merchandise comes neither within the headnote 1 definition nor the common meaning of furniture.

We are cognizant that the First and Third Divisions [2] of this court, in opinions promulgated one month apart, have taken divergent positions with respect to the scope of headnote 1 and its effect on item 727.35.

In *The American Import Co., Wheeler & Miller et al.* v. *United States*, 62 Cust. Ct. 486, 489, C.D. 3807 (1969), involving gunracks claimed to be dutiable as furniture under item 727.35, the First Division, per Judge Newman, sustained the protests on the ground that the articles came within the common meaning of the term "furniture" and, holding that it was therefore unnecessary to consider whether or not they were within the purview of the headnote language, commented:

> Hence, there is no dispute that the merchandise is dutiable as claimed by plaintiffs if it is furniture, either within the common meaning of the term (as enunciated in past decisions of this court), or within the headnote definition. It is clear that the latter, by use of the word "includes" followed by several enumerations, was merely intended by Congress to extend the meaning to be ascribed to the term "furniture," and not to restrict its meaning as judicially determined. Cf. *United States* v. *Kimball Dental Mfg. Co.*, 19 CCPA 353, T.D. 45501 (1932); *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T.D. 31681 (1911). Therefore, if the gunracks are within the common meaning of the term furniture, it becomes unnecessary to consider plaintiffs' additional contention that they are within the purview of the language "sectional bookcases and similar sectional furniture" in the headnote.[3]

---

[2] 28 U.S.C. § 254 has been amended by the Customs Courts Act of 1970, P.L. 91–271, to provide for single-judge trials in this court.

[3] See *Sprouse Reitz & Co., Frank P. Dow Co., Inc.* v. *United States*, 67 Cust. Ct. 209, 214, C.D. 4276, 332 F. Supp. 209, 212 (1971), characterizing the cited comment as *"obiter dictum"*, where the same question was discussed but not decided as the court determined that the controverted spice racks there involved fell neither within the headnote definition nor the common meaning of the term furniture.

In *Sankyodai Corp.* v. *United States*, 62 Cust. Ct. 630, 633, C.D. 3837 (1969), the Third Division, per Judge Richardson, overruled plaintiff's claim that certain wooden boat seats were erroneously classified as parts of yachts or pleasure boats under item 696.15 and were properly dutiable as furniture under item 727.35 on the grounds that item 727.35 was not applicable in view of the specific provision for such seats under item 696.15, and, secondly, that the imported articles were not "movable articles of utility" within the statutory definition of the headnote. The court stated (page 633) :

> We are unable to agree with plaintiff's contention. Item 727.35 of the tariff schedules on which plaintiff relies is a *residual* and *qualified* tariff provision. It is *residual* because of the presence in the superior heading of a "not specially provided for" clause. And it is *qualified* because by statutory definition of the term "furniture" as used in item 727.35 classification thereunder is confined to articles which are, among other things, "movable articles of utility". See *Arthur J. Humphreys, Packard-Bell Electronics* v. *United States*, 59 Cust. Ct. 231, 238, C.D. 3128, 272 F. Supp. 951 (1967), affirmed 56 CCPA 67, C.A.D. 956 (1969). Both of these restrictions or limitations combine to defeat plaintiff's contention here on the basis of the evidence before the court. [Emphasis copied.]

Whether or not headnote 1 delimits the term "furniture" for purposes of classification under Schedule 7, Part 4, Subpart A need not be reached here as we have concluded that the subject articles fall neither within the headnote definition nor the common meaning of that term.

It is clear from the most casual examination of exhibits 1, 2 and 3 that they do not come within the headnote definition. The articles obviously were not "designed to be placed on the floor or ground"; nor could anyone seriously contend that they are "kitchen cabinets and similar cupboards, seats and beds", or "sectional bookcases and similar sectional furniture, even though designed to be fixed to the wall or stand one on the other; * * *".

Turning to the common meaning of furniture, an oft quoted definition of that term is found in *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, 182, T.D. 31941 (1911), wherein the court stated:

> Giving to words their strict meaning rather than the signification resulting from a careless use of them, screens such as those imported are not house furniture at all, but house furnishings—that is to say, articles designed more for the ornamentation of the house than for the personal use or convenience and comfort of

its occupants. The term "furniture" as ordinarily used may mean that with which anything is furnished, supplied, or equipped. House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped. House furniture, in these modern times, has come to denote those articles of household utility which were formerly made of wood and which are designed for the personal use, convenience and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and tidies, pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings. * * *

Since *Morimura* the question of whether or not a particular article comes within the term "furniture" has been before this court and the appellate court many times. See *Furniture Import Corp.* v. *United States*, 56 Cust. Ct. 125, C.D. 2619 (1966), for a list of such cases and the items involved.

The distinction between "furniture" and "furnishings" was considered in *Fabry Associates, Inc.* v. *United States*, 45 Cust. Ct. 88, C.D. 2203 (1960), wherein the court held that sets of shelves in knocked-down condition to be fastened to walls were furniture. Finding that the evidence established that the articles—

* * * are used for the same purposes as bookcases, book shelves, night and telephone stands, and the stands or shelves used for holding a wide variety of objects, all having legs or portions which rest upon the floor, which are commonly found in homes or offices and which are commonly regarded as furniture. * * * [45 Cust. Ct. at 90.]

the court stated:

It has been held that the term "furniture" is one of broad signification (*Necchi Sewing Machine Sales Corp.* and *Barian Shipping Co., Inc.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489), and one which is not limited to what might be termed the usual or conventional kind of furniture (*Decorative Imports* v. *United States*, 43 Cust. Ct. 31, C.D. 2099). It embraces articles of utility which are designed for the use, convenience, and comfort of the dweller in a house (*Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941) or the occupier of a place of business. "Furnishings," on the other hand, are subsidiary adjuncts and appendages designed for the ornamentation of a dwelling or business place, or which are of comparatively minor importance so far

as use, comfort, and convenience are concerned (*Morimura Bros. v. United States, supra*). We are satisfied that the articles at bar fall into the category of "furniture," rather than that of "furnishings."

In *United States v. Shelford, Inc., et al.*, 53 CCPA 53, 56, C.A.D. 876 (1966), our court of appeals held that automobile backrests were not furniture, stating:

> While we agree that the backrests are more sturdy than tidies and pillow shams, we don't believe this difference distinguishes furniture from furnishings. The determinative factor, we think, is the use to which an item is put—the question being whether the goods function as furniture. *United States v. Quon Quon Co.*, 46 CCPA 70, C.A.D. 699. Here we think the goods function as an accessory to furniture rather than furniture itself. While the backrests support the back, they do so in only a limited sense as a secondary rather than a primary support. The backrests, unlike the peel beach chairs involved in the litigation below, are not self-supporting but must be used much as a pillow or cushion is used. As such, we think that in ordinary terminology the backrests are more properly denominated furnishings rather than furniture.

In *Warren Atlantic, Inc. v. United States*, 60 Cust. Ct. 36, C.D. 3250, 278 F. Supp. 302 (1968), the court held that wastebaskets and letter trays were not classifiable as furniture.[4] After referring to various judicial decisions, dictionary definitions, and pertinent Tariff Information Surveys, the court concluded (pages 41–42):

> In view of the definitions and the cases cited, it is evident that not all articles, used to equip households and offices, which are utilitarian and not merely ornamental, fall within the term "furniture" as commonly understood and as used in tariff statutes. Articles of comparatively minor importance so far as personal use, convenience, and comfort are concerned or which function as accessories, or subsidiary adjuncts to furniture, are not deemed to be furniture.
>
> *     *     *     *     *     *     *
>
> Although the wastebaskets involved herein are composed of walnut rather than rattancore, they are wastebaskets having the same use and of a similar type to those involved in the *Royal Cathay* case. For the reasons stated therein, and on the further ground that these articles are of comparatively minor importance so far as use, comfort, and convenience are concerned, and func-

---

[4] *Warren Atlantic* like the *Shelford, Fabry,* and *Furniture Import* cases, involved the classification of merchandise under the Tariff Act of 1930, not the Tariff Schedules of the United States; but all are pertinent hereto insofar as they deal with the common meaning of "furniture".

tion as accessories or subsidiary adjuncts to furniture, such as desks and tables, we hold that they are not furniture.

The letter trays are clearly accessories which are used in offices upon desks or tables. The witness himself did not consider articles used upon a desk to be furniture. The letter trays herein are no more furniture than are other articles used upon a desk, such as inkstands, penholders, calendars, or desk pads.

We find, upon the record herein, that exhibits 1 and 2, the carved bookshelf and Koran rack, respectively, are not furniture but accessories to be used in offices or homes upon desks, tables or similar articles of furniture. Even assuming that they are used as claimed, like the wastebaskets in *Warren Atlantic*, they are of comparatively minor importance so far as use, comfort, and convenience are concerned, and function as accessories or subsidiary adjuncts to furniture.

With respect to exhibit 3, the folding hatrack, we note its close similarity to the merchandise involved in *National Silver Co.* v. *United States*, 54 Cust. Ct. 209, C.D. 2535 (1965),[5] assessed as manufactures of wood, and claimed to be dutiable as furniture under the Tariff Act of 1930.

Overruling the protests, the court stated (pages 212–213):

* * * Plaintiff further assumes that the common clothes tree is an article of furniture and thus controls classification of other wooden articles having like uses. However, in its use, the import still more closely resembles the hooks, pegs, and rods employed in cloakrooms, vestibules, closets, dressing rooms, and bathrooms to hold hats, clothing, towels, etc. We do not think such articles are commonly known as furniture when fixed to walls or adapted to be. * * * The latter does not resemble a clothes tree in construction or method of use. It is merely a folding framework with pegs, which has no use until it is attached to a wall or closet door. It must be not just hung but firmly and permanently affixed with deep-driven nails in order to hold garments, towels, or other items. It is not like an article of furniture before being hung and does not become so afterwards. We hold, therefore, that the imported merchandise does not fall within the term "furniture," as commonly understood and as used in the tariff act.

We find that *National Silver* is *stare decisis* with respect to the folding hatracks illustrated by exhibit 3 herein.

---

[5] The merchandise was described by the court, p. 210, as—

* * * a folding article, composed of 12 strips of wood, 12 inches long, 1¼ inches wide, and ⅜ of an inch thick, fastened together so that it opens out into a framework of three squares or diamonds. At the points where the strips are fastened, pegs, about 3½ inches long, protrude. The article contains 10 pegs in all. Four of the strips contain holes for nails at each end.

In conclusion, none of the articles in issue comes within the common meaning of the term furniture.

The protest is overruled and judgment will issue accordingly.